# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JERMAINE DOLLARD and KEISHA DOLLARD, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. NO.: N16C-01-102 AML |
| RICHARD T. CALLERY, et al., | ) ) ) | |
| Defendants. | ) | |

Submitted: January 16, 2018
Decided: April 16, 2018

**Upon Defendants Callery, Division of State Police, and Department of Health and Social Services' Motion to Dismiss: Granted in part**

## <u>MEMORANDUM OPINION</u>

Patrick C. Gallagher, Esquire, and Alexander W. Funk, Esquire, of CURLEY, DODGE & FUNK, LLC, Dover, Delaware, Attorneys for Plaintiffs.

Michelle D. Allen, Esquire, of LAW OFFICES OF MICHELLE D. ALLEN, LLC, Hockessin, Delaware, Attorney for Richard Callery, Joseph C. Handlon, Esquire, and Michael F. McTaggart, Esquire, of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorneys for DHSS and DSP, respectively.

**LeGROW, J.**

Plaintiffs initiated this civil case after the investigation of alleged misconduct at Delaware's Office of the Chief Medical Examiner ("OCME") and retesting of certain drug evidence revealed that the cocaine Plaintiff was convicted of dealing was, in fact, powdered sugar. Delaware State Police officers arrested Plaintiff Jermaine Dollard for drug trafficking in June 2012. Dollard was convicted at trial and filed an appeal. While Dollard's appeal was pending, the State commenced an investigation into alleged misconduct at the OCME. The investigation prompted officials to retest the evidence in Dollard's case, at which time the drug evidence tested as confectioner's sugar. Now Mr. and Mrs. Dollard (collectively, "Plaintiffs") bring civil claims against several OCME employees mentioned in the State's OCME investigative report and all police officers involved in Mr. Dollard's arrest, as well as the State, Department of Health and Social Services ("DHSS"), and Delaware State Police ("DSP").

Although falsifying evidence plainly violates a criminal defendant's right to fair trial, the question presented here is whether Plaintiffs may maintain a claim against every individual and entity, however remote, involved in a criminal case, without any other allegations connecting those individuals and entities to the evidence in this case and alleged misconduct involving evidence. I find the amended complaint fails to state a claim against almost all Defendants, even when applying Delaware's permissive pleading standard. My reasoning follows.

1

**Factual and Procedural Background**

The following facts are taken from the amended complaint drawing all permissible inferences in Plaintiffs' favor. The Delaware State Police pulled over Mr. Dollard on June 13, 2012, in New Castle County. After Mr. Dollard's arrest, Officer Jeremiah Lloyd drove Mr. Dollard's vehicle to Delaware Police Troop 2. A canine inspection of the vehicle supervised by Officer Kristin Carroll indicated the presence of narcotics. Officer Christopher Sutton then searched inside the vehicle and found a concealed compartment containing two kilograms of white powder. A field-test performed by Officer Sutton identified the powder as cocaine. On approximately June 25, 2012, Officer Scott McCarthy delivered the powder to James Woodson, a forensic investigator at the OCME.

On or about August 14, 2012, Areatha Bailey, an administrative assistant at OCME, transported the evidence to Irshad Bajwa for testing. Bajwa, a forensic chemist at OCME, had access to the powder between August 29, 2012, and September 10, 2012. Bajwa prepared a lab report indicating the powder found in Mr. Dollard's vehicle was cocaine. During Mr. Dollard's trial on October 29, 2013, Bajwa testified the powder tested positive for cocaine. On November 6, 2013, the jury convicted Mr. Dollard of Aggravated Possession, Drug Dealing, Conspiracy Second Degree, Possession of a Controlled Substance, and Possession of Drug Paraphernalia.

While Mr. Dollard's appeal was pending before the Supreme Court, the State commenced an investigation into alleged misconduct at the OCME. That investigation was prompted by events that arose in a criminal trial unrelated to Mr. Dollard's case. Specifically, on January 14, 2014, during the criminal trial of Tyrone Walker,[1] a witness opened an exhibit that was supposed to contain 67 blue Oxycodone pills. Instead, the exhibit contained 14 pink pills. Bajwa had at least some connection to the evidence in Walker's trial, and the amended complaint alleges Bajwa attempted to remove an entry on the evidentiary worksheet in the Walker case. Bajwa received a Corrective Action Request from OCME relating to that incident, which generally means he was disciplined for the issue.

The investigation into the OCME prompted by the events at Walker's trial revealed widespread issues within the agency, some of which Plaintiffs contend are relevant to this case. The investigation yielded two formal reports, one prepared by the Attorney General's office and one prepared by Andrews International, as well as some court proceedings. Drawing from those materials, the amended complaint alleges misconduct by several OCME employees. According to the complaint, the investigative reports describe Caroline Honse, the Controlled Substance Unit Laboratory Manager, as a poor manager who chose favorites among the OCME

---

[1] *State v. Walker*, I.D. No. 1202002406.

employees.[2] Kelley Georgi, a Forensic Evidence Specialist ("FES"), allegedly never received training to take-in or log evidence. Bailey, an Administrative Specialist, allegedly worked around narcotics at OCME even though she had no training or qualifications for such work. Bailey allegedly stashed evidence in her office and had an uncanny, singular ability to find evidence when no one else could locate it. One coworker claimed Bailey admitted to being a thief. Despite her own lack of credentials, Bailey allegedly trained Laura Nichols, who worked as a laboratory technician. In addition to his misconduct in the *Walker* trial, Bajwa, a forensic chemist at OCME, allegedly had a history of failing to document evidentiary observations in real time, maintain chain of custody, use proper sample sizes for testing, properly seal evidence, and maintain good work quality. None of these individuals, however, criminally was charged after the investigation. As to Defendant Patricia Phillips, the amended complaint only alleges Phillips worked as a chemist at the OCME Controlled Substance Unit.

As to the other OCME Defendants, James Daneshgar, a lab worker at OCME, reported to investigators that Callery delegated day-to-day leadership of the OCME to Hal Brown. Brown, in turn, allegedly delegated the leadership to Honse, who missed work routinely. When the OCME attempted an internal audit after the

---

[2] Am. Compl. 9.

Walker case, John Lucey, the lead auditor, allegedly failed to follow basic procedures. In Fall 2013, Robyn Quinn replaced Honse as lab manager.

Certain OCME Defendants were disciplined or charged as a result of the investigation. Richard Callery, the Chief Medical Examiner and head of OCME, was suspended from his position pending the result of a criminal investigation into his activities as an expert witness in other jurisdictions. Farnam Daneshgar, the Laboratory Manager, was arrested for falsifying business records, possession of marijuana, and possession of drug paraphernalia. The amended complaint alleges Farnam Daneshgar also was under investigation for "dry labbing" evidence. Woodson, a forensic investigator, was arrested for drug trafficking, theft of a controlled substance, tampering with physical evidence, official misconduct, and unlawful dissemination of criminal history information.

Following the investigation and the revelation of evidence that Woodson was indicted for charges related to the OCME investigation and may have had some contact with the evidence in Mr. Dollard's case, the Superior Court granted Mr. Dollard's motion for New Trial. The Court ordered retesting of the "brick" evidence discovered in Mr. Dollard's vehicle. The retest revealed the "bricks" actually were confectioner's sugar. The State then dismissed the charges against Mr. Dollard. Plaintiffs filed this action in January 2016, alleging Mr. Dollard's constitutional rights were infringed. Defendants Brown, Honse, Quinn, Lucey, Georgi, Nichols,

Bajwa, Bailey, Phillips, J. Daneshgar (collectively with DHSS and the State of Delaware, the "DHSS Defendants"), Lloyd, Carroll, Sutton, McCarthy (collectively with DSP, the "DSP Defendants"), and Richard Callery filed motions to dismiss in January 2017, and the parties briefed and argued the motions. Defendants F. Daneshgar and Woodson (collectively, "Non-moving Defendants") did not move to dismiss.

**The Parties' Contentions**

The amended complaint advances claims for intentional infliction of emotional distress ("IIED"), *respondeat superior*, and loss of consortium, as well as a claim under 42 U.S.C. § 1983 for deprivation of rights. Count I alleges all Defendants intentionally or recklessly engaged in outrageous conduct that caused Mr. Dollard's imprisonment, and count II alleges defendants Callery, Brown, Honse, DSP, DHSS, and the State are liable under the theory of *respondeat superior* for the actions of the other, individual Defendants. Count III asserts a Section 1983 claim against DHSS and the State because they were responsible for the OCME during the time period in question. Count IV alleges a Section 1983 claim against all other individual Defendants, except DSP, for depriving Mr. Dollard of due process and a fair trial as guaranteed by the U.S. and Delaware Constitutions. In Count V, Mrs. Dollard claims loss of consortium against all Defendants for the period of Mr. Dollard's imprisonment.

6

The DHSS Defendants, DSP Defendants, and Callery (collectively, the "Moving Defendants") filed separate motions to dismiss. After briefing, Plaintiffs stipulated to the dismissal of all claims against the State and DHSS. Each of the remaining Moving Defendants' briefs raises similar arguments and defenses in support of their motions. Summarizing their arguments generally, Moving Defendants contend: (1) the amended complaint fails to state any claim against any of them; (2) Plaintiffs' claims are time-barred because the injury accrued more than two years before Plaintiffs filed their complaint; (3) Plaintiffs' claims against the state actors are barred by sovereign immunity because all the alleged conduct occurred while Defendants acted in their official capacity; and (4) any remaining claims against the Defendants are barred by qualified immunity or under the State Tort Claims Act (the "Tort Claims Act").

## ANALYSIS

Delaware's pleading standard under a 12(b)(6) motion to dismiss is minimal, but not meaningless.[3] When considering a motion to dismiss, the trial court will accept all well-pleaded factual allegations in the complaint as true, and will accept even vague allegations as "well-pleaded" if they provide defendants notice of a claim.[4] The Court will draw all reasonable inferences in favor of the plaintiff,

---

[3] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings, LLC*, 27 A.3d 531, 536 (Del. 2011).

[4] *Id.*

denying the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof.[5]

Although the United States Supreme Court in the *Twombly-Iqbal* decisions enunciated a "plausibility" standard for pleadings in federal court, the lower "reasonable conceivability" threshold continues to apply in Delaware state courts.[6] With regard to alleged civil rights violations under Section 1983, however, there is disagreement whether a Delaware court should apply a plausibility or conceivability pleading standard.[7] In my view, settled conflict of laws principles require that this Court apply its own procedural rules, including pleading rules, to all claims, even those arising under federal law.[8] Applying the "conceivability" standard does not, however, render federal precedent meaningless to the analysis of this case. Under

---

[5] *Id.*

[6] *Id.* at 537.

[7] Plaintiffs argue Delaware's traditional conceivability standard should apply. *See Spence v. Funk*, 396 A.2d 967, 968 (Del. 1981). Federal courts, however, apply the heightened plausibility standard to Section 1983 claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (". . . [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face . . . .' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . [I]t asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."). In addition, there is some precedent for applying the heightened plausibility standard in Delaware. *See Eskridge v. Hutchins*, 2017 WL 1076726, *2 (Del. Super. March 22, 2017) (". . . the Court holds that a Section 1983 claimant in a Delaware State court must plead his or her claim with sufficient particularity to satisfy the plausibility standard. The Court bases its decision on (1) the standard articulated by the United States Supreme Court for federal courts in Section 1983 pleading; and (2) the application of a heightened pleadings standard in a significant number of Delaware Superior Court decisions issued to date.").

[8] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122 (AM. LAW INST. 1971); *Meyers v. Intel Corp.*, 2015 WL 227824, at *3 (Del. Super. Jan. 15, 2015).

8

either standard, Plaintiffs must allege facts that place Defendants on notice of a claim. Notwithstanding its length, the Amended Complaint largely fails to do that.

### A. The amended complaint fails to state a claim for IIED against all defendants except Bailey and Bajwa.

Plaintiffs argue all Defendants are liable for IIED due to the injuries caused by Mr. Dollard's deprivation of a fair trial and his false imprisonment. "A claim for intentional infliction of emotional distress . . . requires proof that the [defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress."[9] Outrageous conduct is "conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community."[10] "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."[11]

The amended complaint names a large number of defendants, each with varying degrees of involvement in Mr. Dollard's criminal case. With the exception of defendants Bailey and Bajwa, however, the amended complaint universally fails to allege facts against any other Moving Defendant sufficient to support an IIED claim. The Moving Defendants named in this count generally may be divided into the following categories: (1) the DSP officers, (2) the OCME supervisors, (3) the

---

[9] *Hunt ex rel. DeSombre v. Dept. of Safety & Homeland Sec.*, 69 A.3d 360, 367 (Del. 2013).

[10] *Goode v. Bayhealth Med. Ctr., Inc.*, 2007 WL 2050761, at *2 (Del. July 18, 2007).

[11] *Hunt ex rel. DeSombre*, 69 A.3d at 367 (quoting the RESTATEMENT (SECOND) OF TORTS § 46(h) (AM. LAW INST. 1965)).

9

OCME employees not involved in the chain of custody in Mr. Dollard's case, and (4) the OCME employees involved in the chain of custody in Mr. Dollard's case.

As to the DSP officers involved in Mr. Dollard's case, the amended complaint simply alleges that they investigated Mr. Dollard, pulled his car over, discovered a large amount of white, powdery substance in a hidden compartment that field-tested as cocaine, and turned the evidence over to the OCME. From those facts, and the fact the substance tested as sugar two years later, the Plaintiffs seek an inference that one or more DSP officers planted or tampered with evidence.

Plaintiffs' allegations regarding the OCME supervisors are even more tangential as it relates to Mr. Dollard's criminal case. Nothing in the amended complaint alleges the OCME supervisors were involved in, or even aware of, Mr. Dollard's criminal case. Rather, the amended complaint merely regurgitates the mismanagement of the OCME detailed in the investigative reports by the Attorney General's office and Andrews International. From these reports, Plaintiffs seek an inference that the OCME supervisors' mismanagement of the office deprived him of a fair trial.

Similarly, Plaintiffs' allegations regarding the OCME employees not in the chain of custody in Mr. Dollard's criminal case fail to permit any inference that those defendants' conduct caused Mr. Dollard's emotional distress. Plaintiffs allege these

OCME employees were ill-prepared to perform their jobs and often failed to follow procedures. The amended complaint, however, does not allege they were involved in processing, transporting, or handling the evidence in Mr. Dollard's criminal case, or even were aware of his case.

In their IIED claims against these first three categories of Moving Defendants, Plaintiffs essentially ask this Court to infer that because an evidentiary exhibit retested over two years after Mr. Dollard's arrest turned out to be confectioner's sugar, it is reasonable to infer that *anyone* in the chain of custody, or anyone who worked at the OCME office and was mentioned in the later investigation of that office, might have planted, dry-labbed, or otherwise tampered with the evidence. That inference, more accurately characterized as a "leap," is not one this Court fairly may draw without some additional allegation tying the individual defendant to both the chain of custody *and* some history of misconduct that the Court may infer also occurred in this case.

In contrast to the first three categories, Plaintiffs' allegations permit an inference, under Delaware's liberal pleadings standard, that Bailey and Bajwa engaged in outrageous conduct—specifically tampering with evidence in Mr.

Dollard's case—that caused Mr. Dollard's emotional distress.[12]   The amended complaint alleges Woodson was charged with trafficking cocaine and tampering with physical evidence.  Bailey allegedly kept separate boxes of evidence even though she was not trained or authorized to handle evidence.  Bajwa mishandled evidence in the Walker case and had a history of tampering with evidence.  These defendants also specifically are tied to the chain of custody in Mr. Dollard's case.  Woodson received Mr. Dollard's evidence from Officer McCarthy and deposited it at the OCME.  Bailey received the evidence from Woodson and transported it to Bajwa, whose testing purportedly indicated the powder was cocaine.  Two years later, the evidence was retested and identified as confectioner's sugar.  Under the plausibility standard applicable at this stage of the proceedings, the amended complaint alleges sufficient facts for the Court to infer that Bailey and/or Bajwa may have tampered with the evidence in this case.

**B. The amended complaint fails to state a Section 1983 claim against all individual Defendants except Bailey and Bajwa.**

The amended complaint alleges all individual Defendants deprived Mr. Dollard of his due process rights and a fair trial through their policies and practices

---

[12] Notwithstanding the State's argument otherwise, allegations that a state employee planted, tampered with, or falsified evidence in a criminal case, leading to a defendant's wrongful conviction and incarceration, more than adequately states a conceivable claim for IIED.

12

that were inconsistent with the proper handling of evidence.[13]  Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute . . . of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."[14]  To prevail, a plaintiff must demonstrate (1) deprivation of a right under the United States Constitution (2) by a person acting under color of State law.[15]

To state a claim against a particular defendant under Section 1983, Plaintiffs must allege specific conduct by that defendant that violated Mr. Dollard's constitutional rights.[16]  Plaintiffs may not plead in a collective fashion by naming a group of defendants without identifying "*who* is alleged to have done *what* to *whom*."[17]  Requiring individualized pleading for a Section 1983 claim does not, as Plaintiffs argue, improperly heighten Delaware's pleading standard from conceivability to plausibility.  Federal law is clear that a Section 1983 claim must be stated against each individual defendant because such a claim may not be made against a state or its agencies.[18]  Therefore, by requiring a plaintiff to plead the "who"

---

[13] Plaintiffs initially alleged Section 1983 claims against DHSS and the State, but withdrew those claims in response to Defendant DHSS's motion to dismiss.  Pls.'s Answer Br. Def. DHSS's Mot. Dismiss at 21.

[14] Civil Action for the Deprivation of Rights, 42 U.S.C. § 1983 (2016).

[15] *West v. Atkins*, 487 U.S. 42, 49 (1988).

[16] 42 U.S.C. § 1983.

[17] *Robbins v. Oklahoma*, 518 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in the original).

[18] *Will v. Michigan Dept. St. Police*, 491 U.S. 58 (1989).

and "what" of a Section 1983 claim, the courts avoid allowing a plaintiff to plead in the collective and thereby pursue a claim that, in effect, is one against the state. Although the level of specificity required may be slightly lower under Delaware's pleading standard, substantive federal law precludes the generalized "kitchen sink" approach employed in much of the amended complaint.

Applying this standard, Plaintiffs have not pleaded a Section 1983 claim against any moving defendant except Bailey and Bajwa. The amended complaint employs a scattershot approach that fails adequately to allege any facts implicating any other moving DHSS Defendant in an action that conceivably violated Mr. Dollard's constitutional rights. The amended complaint discusses at length the OCME's negligent operation around the time Dollard first was arrested and tried. Notwithstanding the low pleading standard, however, Plaintiffs have alleged no circumstances where any moving defendant acting in their individual capacity, other than Bailey and Bajwa, was involved in Mr. Dollard's case or engaged in conduct that affected Mr. Dollard's rights. Nothing in the amended complaint alleges any of the other individual moving DHSS Defendants came in contact with or even was aware of Mr. Dollard's case.

Plaintiffs seek to attach liability to the OCME supervisor defendants—*i.e.*, Callery, Brown, and Honse—by arguing their allegedly negligent supervision permitted a custom at the OCME that deprived Mr. Dollard of his constitutional

14

rights. In support of this theory, Plaintiffs first cite *Parkell v. Danberg*,[19] in which the Third Circuit Court of Appeals held supervisors can be liable under Section 1983 if they (1) establish a "policy, practice, or custom which *directly* caused the constitutional harm;"[20] or (2) "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."[21] Plaintiffs, however, do not allege the OCME supervisors established a policy or custom designed to dry lab and falsify evidence, nor do they allege the supervisors had knowledge of and acquiesced to the violations. Rather, Plaintiffs allege that the supervisors deliberately were indifferent to the actions of their subordinates.[22] Deliberate indifference, however, is insufficient to establish supervisor liability under *Parkell*. Accordingly, the amended complaint fails to allege facts sufficient to establish supervisor liability under *Parkell*.

In an effort to expand the scope of supervisor liability under Section 1983 to fit their custom-based argument, Plaintiffs cite *Natale v. Camden Cty. Corr. Facility*, in which the Third Circuit held:

> [A] . . . custom may . . . exist where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agent of the government is so obvious, and the inadequacy of existing practice so likely

---

[19] 833 F.3d 313 (3d Cir. 2016).

[20] *Id.* (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (emphasis added)).

[21] *Id.*

[22] Pls.' Answer Br. DHSS's Mot. Dismiss at 26.

to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.[23]

The *Natale* custom analysis, however, applies to entity liability, not supervisor liability.[24] Here, the amended complaint arguably alleges that Mr. Dollard was deprived of his constitutional rights due to the obvious inadequacy of OCME's practices and controls. At best, however, such a claim might succeed against DHSS under *Natale*'s entity liability analysis. For reasons explained below, however, and as Plaintiffs already conceded by dismissing their claims against DHSS, Plaintiffs' claims against DHSS are barred by sovereign immunity.[25]

Finally, the amended complaint fails to allege any conduct whatsoever on behalf of the DSP officers that permits an inference that they engaged in any conduct that violated Mr. Dollard's rights. The mere fact that the police arrested Mr. Dollard and collected evidence that two years later tested as confectioner's sugar does not permit an inference the DSP officers planted evidence or otherwise violated Mr. Dollard's constitutional rights.

## C. Plaintiffs' *respondeat superior* claims are moot.

---

[23] 318 F.3d 575, 584 (3d Cir. 2016) (internal quotation marks omitted).

[24] *Id.* ("There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the government entity for whom the employee works, thereby rendering the *entity* liable under § 1983.") (emphasis added).

[25] Moreover, even if the *Natale* customs analysis extended to the OCME supervisors, those claims also would be barred under principles of sovereign immunity. The claim that a policymaker deliberately was indifferent to the need for a specific policy or practice necessarily implicates a supervisor's official job duties and cannot be viewed as an individual capacity claim.

16

Count II of the amended complaint advances claims against defendants Callery, Brown, Honse, DSP, DHSS, and the State under the theory of *respondeat superior* for employing or supervising the other, individual Defendants. On January 17, 2018, the Court granted a stipulation of dismissal for the State and DHSS, and all claims against those Defendants therefore are moot.[26] As Plaintiffs largely conceded at oral argument,[27] defendants Callery, Brown, and Honse are not the individual DHSS Defendants' employers and therefore cannot be liable under the theory of *respondeat superior*.[28] Because I conclude the claims against the individual DSP Defendants fail to state a claim, Plaintiffs' *respondeat superior* claim against DSP is moot. All Plaintiffs' *respondeat superior* claims therefore fail to state a cognizable claim.

---

[26] Docketed January 17, 2018 (Transaction I.D.: 61576674).

[27] *Dollard v. Callery*, C.A. No. N16C-01-102AML, at 65-67 (Del. Super. Jan. 16, 2018) (TRANSCRIPT).

[28] Although the parties did not identify case law directly on point, in other, similar contexts, this Court has concluded that a supervisor is not an employer. *See, e.g.*, *Stoppel v. Henry*, 2011 WL 55911, at *4 (Del. Super. Jan. 4, 2011); *Meltzer v. City of Wilmington*, 2008 WL 4899230, at *1 (Del. Super. Aug. 6, 2008); *see also* 19 *Del. C.* § 1702(2) ("Employer" for the purposes of the Delaware Whistleblowers' Protection Act "means any person, partnership, association, sole proprietorship, corporation or other business entity, including any department, agency, commission, committee, board, council, bureau, or authority or any subdivision of them in state, county or municipal government. One shall employ another if services are performed for wages or under any contract of hire, written or oral, express or implied."); 19 *Del. C.* § 1302(p) (defining "public employer" or "employer" for purposes of the Public Employment Relations Act as "the State, any county of the State or any agency thereof, and/or any municipal corporation, municipality, city or town located within the State or any agency thereof, which upon the affirmative legislative act of its common council or other governing body has elected to come within the former Chapter 13 of this title or which hereafter elects to come within this chapter, or which employs 100 or more full-time employees.").

**D. Mrs. Dollard's loss of consortium claim is derivative and therefore only can proceed against the remaining Defendants.**

Mrs. Dollard claims loss of consortium against all Defendants. Loss of consortium is a derivative claim that does not survive if the underlying claims, in this case intentional infliction of emotional distress and Section 1983, are extinguished.[29] Accordingly, Mrs. Dollard only may maintain her loss of consortium claim against Bailey, Bajwa, and the Non-moving Defendants.

**E. The amended complaint adequately alleges facts that, if true, would toll the statute of limitations.**

Moving Defendants contend Plaintiffs' claims are barred by the statute of limitations because Mr. Dollard's arrest occurred in June 2012, and personal injury actions and constitutional claims are time-barred after two years.[30] In response, Plaintiffs argue their claims are premised on injuries unaccompanied by force and therefore are subject to a three-year limitations period.[31] Further, Plaintiffs argue the statute of limitations was tolled because their injuries inherently were unknowable or Defendants fraudulently concealed their actions.

The statute of limitations is an affirmative defense, but it may be asserted in a motion to dismiss.[32] Here, there is a dispute as to whether a two- or three-year statute

---

[29] *Jones v. Elliott*, 551 A.2d 62, 64 (Del. 1988).
[30] 10 *Del. C.* § 8119.
[31] 10 *Del. C.* § 8106(a).
[32] *Gadow v. Parker*, 865 A.2d 515, 519 (Del. 2005) ("The Superior Court Civil Rules expressly permit a defendant to raise the defense of limitations in a motion to dismiss or in a first responsive pleading to the complaint.").

18

of limitations applies.[33]   Plaintiffs argue that their claims are based on injuries unaccompanied by force, and that 10 *Del. C.* § 8106 provides for a three-year statute of limitations in such cases.  On the other hand, DHSS cites a case in which this Court applied a two-year statute of limitations to IIED claims.[34]  The Court need not resolve that issue, however, because the amended complaint alleges sufficient facts to support a conclusion that the action was tolled until at least January 2014, two years before Plaintiffs initiated this action.

Generally, a cause of action accrues when the wrongful act occurs.[35]  A "plaintiff's ignorance of injury or loss will not delay the accrual of his cause of action."[36]  The "time of discovery" exception applies, however, when the injuries are both (1) "inherently unknowable," and (2) sustained by a "blamelessly ignorant" plaintiff.[37]  Additionally, the statute is tolled if the injury fraudulently was concealed. "Fraudulent concealment requires an affirmative act of concealment or 'actual artifice' by a defendant that prevents a plaintiff from gaining knowledge of the facts."[38]

---

[33] *Compare* Def. Callery's Mot. Dismiss 15, *with* Pls.' Answer to Def. Callery's Mot. Dismiss 28.
[34] Def. DHSS's Reply Br. Supp. Mot. Dismiss 16 (citing *Ayres v. Jacobs & Crumplar, P.A.*, 1996 WL 769331, at *5 (Del. Super. Dec. 31, 1996)).
[35] *Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130 (Del. 1974).
[36] *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 834 (Del. 1992) (citing *Mastellone v. Argo Oil Corp.*, 82 A.2d 379 (Del. 1951)).
[37] *Id.* at 835.
[38] *Weiss v. Swanson*, 948 A.2d 433, 451-52 (Del. Ch. 2008).

Although Mr. Dollard's arrest occurred in June 2012, his alleged injury—the deprivation of a fair trial through falsified evidence—only was discovered in late 2014. The amended complaint adequately alleges Mr. Dollard's injury was unknowable or fraudulently was concealed by unknown individuals working at OCME who falsified test results, dry-labbed evidence, or covertly replaced evidence with confectioner's sugar. Plaintiffs filed this case in January 2016, and the amended complaint permits a reasonable inference that the statute of limitations was tolled until late 2014, when the falsified evidence was discovered. The defendants who remain in the case, however, may renew a statute of limitations argument, if appropriate, on a fuller record.

### F. Sovereign immunity does not bar Plaintiffs from suing DSP or Callery in his individual capacity, but does bar Plaintiffs from suing DHSS.

Although Defendants' sovereign immunity arguments are moot because I already have concluded the amended complaint fails to state a claim against these defendants, I nonetheless briefly address those arguments for the sake of a complete record. Callery argues all claims against him are barred under sovereign immunity because all alleged wrongdoing occurred while he was acting under color of state law in his official capacity.[39] Regarding Callery, Plaintiffs argue sovereign immunity does not apply because they are suing Callery solely in his individual

---

[39] *See Ringer v. Smith*, 1994 WL 750319, at \*2 (Del. Super. Nov. 23, 1994).

capacity.  Additionally, because Plaintiffs brought claims against DSP and DHSS, those claims also must demonstrate waiver of sovereign immunity.

**1. Sovereign immunity does not bar claims against Callery in his individual capacity.**

When it is unclear from a complaint whether a plaintiff intends to sue a defendant in his individual or official capacity, the Third Circuit employs a "course of proceedings" test.[40]  Under this test, the Court examines "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability,"[41] regardless of whether the complaint identifies the capacity in which a defendant is sued.  The Court considers "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity."[42]  The essential inquiry is whether a plaintiff's intention to hold a defendant personally liable fairly can be ascertained from the pleadings.[43]

Here, apart from the supervision claim under Section 1983, it appears Plaintiffs intended to sue Callery in his individual capacity.[44]  The amended complaint alleged Callery acted in an intentional manner.  Plaintiffs sought punitive

---

[40] *Davis v. Thomas*, 2009 WL 3112318, at *3 (D. Del. Sept. 25, 2009).
[41] *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993).
[42] *Moore v. City of Harriman*, 272 F.3d 769, 772 n.1 (6th Cir. 2001).
[43] *Davis*, 2009 WL 3112318, at *3.
[44] As previously noted, Plaintiffs' claims against Callery under Section 1983 relating to OCME policies or lack thereof are by their nature official capacity claims. *See supra* n. 25.

21

damages from all individual Defendants, including Callery, which are unavailable when suing an individual solely in his official capacity. In their response to Callery's motion to dismiss, Plaintiffs explicitly stated that they intended to sue Callery in his individual capacity. Plaintiffs' counsel affirmed this at oral argument. Accordingly, I find Plaintiffs intended to sue Callery in his individual capacity and, if the complaint stated a valid claim against him, he therefore could not avoid suit under principles of sovereign immunity.

## 2. Sovereign immunity bars Plaintiffs from suing DHSS, but not DSP because DSP has waived immunity up to the limits of its insurance coverage.

Under the doctrine of sovereign immunity, a state agency may not be sued without its consent.[45] "The General Assembly, however, can waive sovereign immunity by an Act that clearly evidences an intention to do so."[46] Therefore, the first requirement for bringing a claim against a state agency is identifying an enactment waiving sovereign immunity.[47] Maintaining an insurance policy for the government agency is one way the State can waive sovereign immunity.[48]

Here, Plaintiffs failed to identify a waiver of immunity for DHSS. DHSS filed an affidavit from the Insurance Coverage Administrator stating DHSS has not

---

[45] *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004).
[46] *Id.*
[47] *Id.* at 573.
[48] *Janowski v. Div. of State Police Dep't of Safety and Homeland Sec.*, 2009 WL 537051, at *3 (Del. Super. Feb. 27, 2009).

purchased insurance coverage that would be applicable to this case.[49]   Because

Plaintiffs have failed to establish waiver by statute or insurance, sovereign immunity

bars Plaintiffs' claims against DHSS.   The parties conceded at oral argument,

however, that DSP has insurance coverage.   Accordingly, had Plaintiffs stated a

claim against DSP, sovereign immunity would not bar that claim.

### G. Bajwa is immune from suit for claims based on his in-court testimony and his expert report admitted into evidence.

Bajwa argues he is immune from any claim relating to his in-court testimony

and from "his testing of the Dollard drug evidence."[50]   Plaintiffs argue the absolute

privilege relating to witness testimony only extends to claims relating to injury to

reputation, and that any immunity beyond such reputation-based claims extends only

to police officers.[51]

Absolute immunity from civil suit for testimony provided in judicial

proceedings is an English common law rule adopted throughout this country.[52]

Many American jurisdictions, including Delaware, require that the testimony at issue

---

[49] Ex. G to DHSS's Mot. Dismiss at 2.

[50] DHSS's Mot. Dismiss 13 n.21.

[51] Plaintiffs also argue Bajwa waived this argument by failing to raise it in the body of DHSS's opening brief.   Given, however, the myriad issues and allegations against the various defendants DHSS represents, it was understandable, if not ideal, that the argument was contained in a footnote. Plaintiffs had full opportunity to consider and respond to the argument, and the Court therefore will consider the merits of the defense.

[52] *See Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983) (citing *Cutler v. Dixon* (1585) 76 Eng. Rep. 886; *Anfield v. Feverhill* (1614) 80 Eng. Rep. 1113; *Henderson v. Broomhead* (1859) 157 Eng. Rep. 964, 968).

was relevant to the judicial proceeding.[53] Outside that threshold element, the immunity applies, even if the witness's statement was false and malicious.[54]

It is settled law that Plaintiffs may not maintain a Section 1983 claim relating to Bajwa's testimony at Mr. Dollard's criminal trial. In *Briscoe v. LaHue*, the United States Supreme Court held that all witnesses, including police officers, absolutely are immune from Section 1983 liability for testimony at a criminal trial, even if that testimony amounted to perjury.[55] Although Plaintiffs argue the holding in *Briscoe* was limited to police officers' testimony, the Supreme Court unequivocally held the immunity applies to all witnesses, as well as to lawyers and judges.[56]

As to Mr. Dollard's IIED claim, Plaintiffs argue that absolute immunity applies only to claims for injury to reputation, such as defamation or similar claims. Although there is some Delaware case law supporting that argument,[57] there is no logical reason supporting limiting the immunity to particular types of civil claims. First, the United States Supreme Court's decision in *Briscoe* makes clear that the immunity extends to Section 1983 claims. Second, the policy underlying the

---

[53] *Id.* at 331-32.
[54] *Id.* at 332.
[55] *Id.* at 345.
[56] *Id.* at 334-36, 341-44.
[57] *See Adams v. Gelman*, 2016 WL 373738, at *3 (Del. Super. Jan. 28, 2016) (holding that absolute immunity applies to claims other than defamation, but is limited to claims that involve injury to reputation); *Hoover v. Van Stone*, 540 F. Supp. 1118, 1124 (D. Del. 1982) (extending application of the privilege to non-defamatory, yet similar, claims in order to combat artful pleadings designed to circumvent the privilege).

24

immunity is not limited to particular types of civil actions, and its effect would be lost if the immunity was so limited. The immunity exists to insulate any witness from fear that their testimony later will subject them to a civil claim for damages. That is, the immunity exists to promote full and complete fact-finding in a judicial proceeding, without a witness coloring his or her testimony out of fear of reprisal.[58] Even in cases in which a witness allegedly perjured himself, the immunity shields him from civil suit for that testimony.[59] To cabin the "absolute immunity" for testimony to claims for injured reputation effectively would swallow the rule and, with it, the policy it intends to advance. Other courts have held the immunity extends beyond reputation-based claims.[60] As Judge Learned Hand explained,

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave undressed the wrongs done by dishonest officers than to subject those who try to do their duty in constant dread of retaliation.[61]

That is not to say, however, that the immunity extends to all actions Bajwa took relating to this case. Bajwa is immune for the claims relating to the testimony he gave, and likely to statements contained in his report to the extent it was admitted

---

[58] *Briscoe*, 460 U.S. at 333; *Imbler v. Pachtman*, 424 U.S. 409, 440 (1976).
[59] *Briscoe*, 460 U.S. at 341-42.
[60] *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000) (holding that absolute immunity extends to civil claims for conspiracy to commit perjury); *Simms v. Seaman*, 69 A.3d 880 (Conn. 2013) (holding claims of common law fraud and IIED are barred by absolute immunity).
[61] *Gregoire v. Biddle*, 177 F.2d 579, 581 (1949).

into evidence at trial, but he is not necessarily immune from other actions he may have taken, even if those actions related to or facilitated Mr. Dollard's trial.[62] I am skeptical that the immunity extends to any testing Bajwa may (or may not) have performed, or to any of the other alleged wrongdoing to which Plaintiffs vaguely allude. At this stage of the proceedings, however, specifics are illusive. The determination of the scope of Bajwa's immunity must await a more developed factual record.

## H. Plaintiffs' claims against remaining Defendants are not barred by qualified immunity or the Tort Claims Act.

Callery and the DHSS Defendants argue they are shielded from suit by qualified immunity and the Tort Claims Act. As discussed above, Plaintiffs' Section 1983 claim fails against all the Moving Defendants except Bailey and Bajwa. Therefore, the Court's qualified immunity and Tort Claims Act analyses are limited to those defendants only.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[63] A clearly established right is

---

[62] Section 1983 or other civil claims relating to actions outside the courtroom that facilitated or brought about a criminal prosecution may not be barred by absolute immunity. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 335 (1986) (holding that complaining witnesses who bring about a prosecution generally are not shielded by absolute immunity).

[63] *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curium).

one that sufficiently is clear that any reasonable official would understand that his challenged conduct violated the right.[64] "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[65]

The Tort Claims Act "shields State employees . . . from civil liability if the employee's conduct: (1) arose out of and in connection with the performance of official duties involving the exercise of discretion, (2) was performed in good faith, and (3) was performed without gross or wanton negligence."[66] Plaintiff must establish at least one of these elements is missing in order to defeat a defense raised under the Tort Claims Act.[67]

Regarding qualified immunity, the amended complaint alleges violation of a constitutional right—*i.e.*, the right to fair trial—that clearly was established at the time of the challenged conduct. It is reasonable to infer from the facts alleged that Bailey and Bajwa knowingly violated the law, and they therefore are not entitled to qualified immunity at this stage in the proceedings.

As discussed in Section A., Bailey and Bajwa allegedly handled Mr. Dollard's evidence and engaged in various instances of misconduct. As alleged, Plaintiffs'

---

[64] *Id.*
[65] *Id.* (alteration in original).
[66] *Wonnum v. Way*, 2017 WL 3168968, at *2 (Del. Super. July 25, 2017).
[67] *Id.*

27

claims are not barred by the Tort Claims Act because the allegations permit a reasonable inference that those defendants (i) did not act in good faith, or (ii) were grossly or wantonly negligent toward Mr. Dollard's case. Those allegations are sufficient, at this stage of the proceedings, to allow Plaintiffs' claims to proceed. Defendants are free to raise this defense on a more fully-developed factual record.

**CONCLUSION**

For the foregoing reasons, Moving Defendant's Motion to Dismiss is **GRANTED in part** as to Count I, III, IV, and V and is **GRANTED** as to Count II. **IT IS SO ORDERED.**