# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PRIVETERRA CAPITAL, MANAGEMENT, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **C.A. No. N26C-03-334 PRW** **CCLD** |
| PIXIUM VISION, LLC and PIXIUM VISION SA, | ) ) ) | |
| Defendants. | ) | |

Submitted: March 18, 2026
Decided: April 7, 2026

*Upon Defendant Pixium Vision, LLC's*
*Motion to Dismiss,*
**GRANTED.**

*Upon Defendant Pixium Vision SA's*
*Motion to Dismiss,*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Peter J. Walsh, Jr., Esquire, and Tyler J. Leavengood, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Wesley J. Horton, Esquire (*argued*), and Jason de Bretteville, Esquire, STRADLING YOCCA CARLSON & RAUTH, P.C., Newport Beach, California, *Attorneys for Plaintiff Priveterra Capital Management, LLC*.

A. Thompson Bayliss, Esquire, and Adam K. Schulman, Esquire (*argued*), ABRAMS & BAYLISS LLP, Wilmington, Delaware, *Attorneys for Defendant Pixium Vision, LLC*.

Kevin M. Coen, Esquire (*argued*), and Cassandra L. Baddorf, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, *Attorneys for Defendant Pixium Vision SA*.

**WALLACE, J.**

This dispute arises from a Letter of Intent ("LOI") where Plaintiff Priveterra Capital Management, LLC, sought to acquire Defendants Pixium Vision, LLC ("Pixium LLC") and Pixium Vision SA ("Pixium SA") (collectively, the "Defendants").[1] Pixium LLC is Pixium SA's wholly owned subsidiary. After signing the LOI, Priveterra undertook efforts to eventually buy the Defendants. But the deal didn't come to fruition and Pixium SA eventually entered into French bankruptcy proceedings. Priveterra has brought claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) fraudulent inducement.[2] The Defendants have moved to dismiss that complaint.

For the foregoing reasons, both motions to dismiss are **GRANTED** and Priveterra's complaint is dismissed.

## I. BACKGROUND

The Court draws the following background from Priveterra's complaint and the documents it incorporates by reference.

### A. THE PARTIES

Priveterra is a Delaware limited liability company.[3]

Pixium SA is a French Société Anonyme.[4] Pixium LLC is its subsidiary and

---

[1] *See generally* Compl. (D.I. 1).

[2] *See generally id.*

[3] *Id.*, ¶ 2.

[4] *Id.*, ¶ 4.

also a Delaware limited liability company.[5]  As to those entities' relationship: Pixium SA owned 100% of the share capital of its subsidiary Pixium LLC[6] and was the sole member of Pixium LLC.[7]

## B. LOI LEAD-UP AND NEGOTIATIONS

Throughout 2023, Priveterra and the Defendants negotiated a potential business combination whereby Priveterra would ultimately own the Defendants.[8] During negotiations, individuals associated with Pixium SA referred to and used Pixium SA and Pixium LLC interchangeably.[9]  The same personnel worked for the Defendants and signed documents on behalf of both Defendants.[10]  The Defendants had fully consolidated financial statements.[11]

In connection with the negotiations, Pixium SA CEO Lloyd Diamond assured Priveterra personnel that he was in contact with the Defendants' creditors and that those creditors were willing to negotiate the terms of a financing agreement with Pixium.[12]  At the same time, Mr. Diamond presented to the Defendants' Board that

---

[5] *Id.*, ¶ 3.

[6] *Id.*, ¶ 15.

[7] *Id.*, ¶ 16.

[8] *Id.*, ¶ 8.

[9] *Id.*, ¶ 14.

[10] *Id.*, ¶ 22.

[11] *Id.*, ¶ 20.

[12] *Id.*, ¶ 9.

the Pixium entities were set to run out of cash in September 2023.[13]  Mr. Diamond's

assurances led Priveterra to believe that creditor negotiations were well underway.[14]

This would result in the Defendants rolling their debt position into equity or equity-

linked instruments upon a new transaction.[15]  Relying on Mr. Diamond's assertions,

Priveterra signed the LOI.[16]

## C. RELEVANT LOI PROVISIONS

Section 5 of the LOI reads:

> Except as set forth in the Term Sheet or in any Definitive Agreements entered into by the Parties, each of the Parties will pay its own costs and expenses (including legal, financial advisory, consulting and accounting fees and expenses) incurred at any time in connection with pursuing or consummating the Proposed Transaction; provided that if this LOI is terminated by the Company pursuant to paragraph 6(c) below (provided the Public Entity (or, prior to assignment of this LOI in accordance with Section 10, Priveterra) has used commercially reasonable efforts in negotiating definitive documentation), the Company will, subject to a cap of $1.8 million, reimburse Priveterra or its designee (including the Public Entity) for the fees, costs and expenses actually and reasonably incurred in connection with (x) the acquisition by Priveterra of the Public Entity, (y) payments made into the Trust Account in order to secure an extension of the life of the Public Entity, or (z) in pursuit of the transactions contemplated by the Definitive Agreement.[17]

Section 6(c) allows the Defendants to terminate the LOI following the Exclusivity

---

[13]  *Id.*, ¶ 10.

[14]  *Id.*, ¶ 11.

[15]  *Id.*, ¶ 11.

[16]  *Id.*, ¶ 12.

[17]  *See id.*, ¶ 27; Compl., Ex. 1 (the "LOI") § 5 (underlining in original).

Period's expiration, upon giving written notice to the parties.[18] The Exclusivity Period is the sixty days after Priveterra's LOI assignment.[19] Priveterra and Pixium SA agreed to raise Section 5's reimbursement requirement to $2 million.[20]

Additionally, LOI Section 10 states:

None of the Parties shall be entitled to assign this LOI without the consent of the other Parties; provided, that Priveterra shall be entitled to assign this LOI to the Public Entity immediately upon the closing of the direct or indirect acquisition of the Public Entity (including through an acquisition of the control of Tastemaker Sponsor LLC, the Public Entity's sponsor).

### D. PRIVETERRA'S EFFORTS TO CLOSE THE DEAL

From June through September 2023, Priveterra consistently engaged with the Defendants and the Defendants' advisors to develop documentation for the Proposed Transaction.[21] Priveterra spent over $2 million in connection with the Proposed Transaction.[22] In September, upon Priveterra discovering that the Defendants were struggling to secure financing to continue operations, Priveterra offered to provide

---

[18] Compl., ¶ 28; LOI § 6:

In consideration of the time, effort and expense to be undertaken by the Parties in connection with the Proposed Transaction, upon assignment of this LOI by Priveterra to the Public Entity in accordance with paragraph 10, each of the Public Entity and the Company agrees that, during the sixty (60) day period (which may be extended by mutual consent of the parties) following such assignment (the "Exclusivity Period") . . . .

[19] LOI § 4.

[20] Compl., ¶ 30.

[21] *Id*., ¶ 32–37.

[22] *Id*., ¶ 35.

the Defendants with capital.[23]  The Defendants declined.[24]

Ultimately, the Defendants ran out of financing.[25]  In October 2023, Pixium SA entered safeguard proceedings in the Commercial Court of Paris.[26]  Upon discovering these proceedings, Priveterra notified the Defendants of their responsibility to pay $2 million to Priveterra under LOI Section 5.[27]  The Defendants refused to pay, and this litigation commenced.[28]

## E. PROCEDURAL HISTORY

Priveterra initially filed this action in the Court of Chancery purportedly under that Court's statutory jurisdiction pursuant to 8 *Del. C.* § 111(a)(2).[29]  Except that subsection applies to corporations, not limited liability companies.  And Priveterra

---

[23]  *Id.*, ¶ 37.

[24]  *Id.*, ¶ 39.

[25]  *Id.*, ¶ 38.

[26]  *Id.*, ¶ 41.

[27]  *Id.*, ¶ 44.

[28]  *Id.*, ¶ 45.

[29]  That subsection states that the Court of Chancery has jurisdiction to interpret, apply, or determine the validity of:

> [a]ny instrument, document or agreement (i) by which a corporation creates or sells, or offers to create or sell, any of its stock, or any rights or options respecting its stock, or (ii) to which a corporation and 1 or more holders of its stock are parties, and pursuant to which any such holder or holders sell or offer to sell any of such stock, or (iii) by which a corporation agrees to sell, lease or exchange any of its property or assets, and which by its terms provides that 1 or more holders of its stock approve of or consent to such sale, lease or exchange.

DEL. CODE ANN. tit. 8, § 111(a)(2) (2026).

doesn't seek any equitable relief that might divest the Superior Court of subject matter jurisdiction.[30]   As a result, the case was transferred to this Court.[31]   Still, for efficiency's sake, the undersigned heard arguments on the Rule 12(b)(6) aspects of the motions to dismiss at oral argument, with all knowing then that the case would be transferred.[32]   Now with the case is in the proper court, and arguments having been heard, the motions to dismiss are ripe for a decision.

## II. PARTIES' CONTENTIONS[33]

### A. THE DEFENDANTS

Pixium SA avers that Priveterra's causes of action fail to state a claim.[34]   For the breach-of-contract claim, Pixium SA insists that there is no breach, as it did not have a duty to reimburse fees.[35]   For the good-faith-and-fair-dealing claim, Pixium highlights that Priveterra has not shown an implied condition—so no breach.[36]   For the fraud claim, Pixium maintains that the elements of fraud are not satisfied, and

---

[30]   *See generally* Compl.

[31]   D.I. 2 Ex. A (Stipulation and Order); *See Massachusetts Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2010 WL 3724745, at *2 (Del. Ch. Sept. 24, 2010) ("If this Court lacks jurisdiction, the case can be transferred to an appropriate Delaware court.").

[32]   *See generally* Hr'g Tr. (D.I. 9).

[33]   Again, for the sake of efficiency, the parties transferred their briefing as-is from the Chancery action.   And now, since the subject matter jurisdiction issue is resolved, the Court need not re-summarize those arguments from the briefing.

[34]   *See generally* Def. Pixium Vision SA's Op. Br. in Supp of Mot. to Dismiss Compl. [hereinafter "Pixium SA Op. Br."] (D.I. 4).

[35]   Pixium SA Op. Br. at 11–14 (D.I. 4).

[36]   *Id*. at 15.

Priveterra does not allege distinct damages to overcome the Bootstrap Doctrine.[37] Pixium SA also claims that French bankruptcy law bars Priveterra's suit because Priveterra did not declare its claims in the safeguard proceeding.[38]

Pixium LLC contends that Priveterra has failed to state a claim against it for breach of contract or breach of the implied covenant of good faith since Pixium LLC did not sign the LOI and did not adopt the LOI.[39]

## B. PRIVETERRA

In reply, Priveterra maintains that it has adequately pled its claims against the Defendants.[40] For the breach of contract, Priveterra suggests that the Defendants are contractually bound to reimburse Priveterra and, alternatively, Priveterra has submitted a reasonable interpretation to a survive motion to dismiss.[41] On the implied covenant and fraud claims, Priveterra posits that those claims are not duplicative of the breach-of-contract claim and otherwise are well-pled to surmount the motion-to-dismiss stage.[42] Priveterra also argues that it was not required to

---

[37] *Id*. at 16–21.

[38] *Id*. at 21–23.

[39] Defendant Pixium Vision, LLC's Op. Br. in Supp of Mot. to Dismiss the Verified Second Amended Compl. [hereinafter "Pixium LLC Op. Br."] at 5–10 (D.I. 7).

[40] Pl.'s Answering Br. in Opp'n to Defs.' Motions to Dismiss the Verified Second Amended Compl. [hereinafter "Answer Br."] at 8–17. (D.I. 10).

[41] *Id*. at 8–11.

[42] *Id*. at 11–17.

submit a claim in the French safeguard proceedings.[43]  Lastly, Priveterra claims that it has adequately pled that Pixium LLC adopted the LOI and adequately alleged an alter-ego theory of liability.[44]

## III.  STANDARD OF REVIEW

The Defendants seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The governing standard requires the Court to "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party."[45]  The Court need not "accept every strained interpretation of [Priveterra's] allegations"[46] or conclusory statements "unsupported by allegations of specific facts."[47]  Dismissal is appropriate only if Priveterra "would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[48]

To resolve a contractual question of law at this stage, the motion to dismiss

---

[43]  *Id*. at 17–18.

[44]  *Id*. at 17–23.

[45]  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[46]  *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[47]  *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom., Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

[48]  *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

must be supported by unambiguous contract terms.[49]  To dismiss, the movant's interpretation must be "the *only* reasonable construction as a matter of law."[50]  But absent ambiguity, Delaware courts will not destroy or twist the contract's language under the guise of construing it.[51]

## IV. DISCUSSION

The Court finds that Priveterra's claims aren't well pled.  For its breach-of-contract claim, the LOI's clear and unambiguous language provides that there wasn't a breach as there was no assignment to trigger the Exclusivity Period.  On the implied covenant cause of action, Priveterra fails to identify a gap to be filled or a specific breach other than a vague overarching duty of good faith.  Lastly, Priveterra doesn't state a claim for fraudulent inducement as there was no false misrepresentation by Mr. Diamond.

Since Priveterra's causes of action are not well-pled, the Court doesn't reach the issues of French bankruptcy law's impact on this action or if Pixium LLC adopted the LOI.

### A. PRIVETERRA HASN'T STATED A BREACH-OF-CONTRACT CLAIM.

To prevail on a breach-of-contract claim, one must show: (1) a contractual

---

[49]  *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *7 (Del. Super. Ct. Sept. 29, 2021).

[50]  *Id.* (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003)).

[51]  *Id.*

obligation; (2) a breach of that obligation; and (3) resulting damages.[52] A court generally gives priority to the parties' intentions contained in the four corners of the contract.[53] "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."[54] "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan."[55] "Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."[56] "When construing a contract, and unless a contrary intent appears, [courts] will give words their ordinary meaning."[57]

Where the contract's language is plain and unambiguous, it must be enforced as written.[58] "If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an

---

[52]    *See VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

[53]    *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

[54]    *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del. 1985).

[55]    *Riverbend Community, LLC v. Green Stone Engr., LLC*, 55 A.3d 330, 334 (Del. 2012) (citation omitted).

[56]    *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 256 (Del. 2017), *as revised* (Mar. 28, 2017) (quoting *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005)).

[57]    *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992).

[58]    *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006).

understanding of intent."[59]

Pixium SA and Priveterra spar over Sections 5 and 6 of the LOI. In the LOI, "Company" is Pixium SA.[60] The convoluted, relevant language of Section 5, with Pixium SA inserted and the disputed parenthetical highlighted, reads as follows:

> [E]ach of the Parties will pay its own costs and expenses (including legal, financial advisory, consulting and accounting fees and expenses) incurred at any time in connection with pursuing or consummating the Proposed Transaction; provided, that if this LOI is terminated by [Pixium SA] pursuant to paragraph 6(c) below (provided the Public Entity (or, prior to assignment of this LOI in accordance with Section 10, Priveterra) has used commercially reasonable efforts in negotiating definitive documentation), [Pixium SA] will, subject to a cap of $1.8 million, reimburse Priveterra or its designee (including the Public Entity) for the fees, costs and expenses actually and reasonably incurred . . . .

Section 6(c) provides that Pixium SA can terminate the LOI *after* expiration of the Exclusionary Period by written notice to the other parties.[61] The Exclusivity Period is the sixty days after Priveterra assigns the LOI.[62] There has been neither an assignment by Priveterra, nor a written termination notice by Pixium SA. Priveterra argues that Section 5 entitles it to reimbursement before assignment based on the parenthetical "prior to assignment of this LOI in accordance with Section 10."[63] Not so.

---

[59] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

[60] LOI at 1.

[61] *Id.*, § 6.

[62] *Id.*, § 5.

[63] *Id.*

- 11 -

Reading Section 5 in a light most favorable to Priveterra, it allows Priveterra to recover expenses only if Pixium SA terminates under Section 6(c) (provided that, prior to assignment, Priveterra used commercially reasonable efforts before assignment). Thus, for Priveterra to obtain reimbursement:

1. Pixium SA had to terminate pursuant to 6(c); *AND*

2. the Public Entity used reasonable efforts *OR* Priveterra used reasonable efforts before assignment under Section 10.

Priveterra had to use reasonable efforts before the assignment. This is a condition Priveterra had to satisfy—in addition to—Pixium SA's termination under section 6(c) to trigger a right to reimbursement.[64] Pixium SA still had to terminate the LOI *after* the Exclusivity Period and give written notice. Neither occurred. And it's not ambiguous what must happen for Priveterra to obtain reimbursement. Even if the safeguard proceedings satisfied the written-notice requirement, there is still no assignment to start the Exclusivity Period.

Priveterra suggests the Court should isolate the clause "(or, prior to assignment of this LOI in accordance with Section 10, Priveterra)"[65] and find that this tends to show that Priveterra could obtain reimbursement without an

---

[64] *See ITG Brands, LLC v. Reynolds Am., Inc.,* 2017 WL 5903355, at *8 (Del. Ch. Nov. 30, 2017) (interpreting the word "provided" as a proviso that conditions the principal matter that it qualifies). Here, the term "provided that" in the parenthetical qualifies the reasonable-efforts condition.

[65] LOI § 5.

- 12 -

assignment.[66] But Delaware law instructs the Court to give each provision and term effect; to avoid rendering any part of the contract mere surplusage.[67] And a contract's single clause or paragraph cannot be read in isolation—it must be read in context.[68] Here, the parenthetical clause merely required Priveterra to use reasonable efforts if it wanted to obtain a reimbursement in the event was a 6(c) termination.[69]

One more thing—the LOI isn't contradictory. Priveterra says it has shown a contradictory reading since Section 10 allows Priveterra to assign the LOI to the Public Entity "immediately upon the closing of the direct or indirect acquisition of the Public Entity."[70] Section 10 doesn't contradict Section 5; it just provides for when Priveterra could make the assignment. Again, Priveterra never assigned. Accordingly, Priveterra has failed to state a breach-of-contract claim since there has been no breach.[71]

---

[66] Answer Br. at 8–11.

[67] *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 839 (Del. 2019); *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010).

[68] *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1260 (Del. 2010).

[69] *See SeaWorld Entm't, Inc. v. Andrews*, 2023 WL 3563047, at *5–6 (Del. Ch. May 19, 2023) (declining to read a parenthetical clause in isolation to create ambiguity in a contract where none existed).

[70] LOI § 10.

[71] Because there is no well-pled breach-of-contract claim—the anti-bootstrapping doctrine argument is inapplicable to Priveterra's fraud claim. *See Levy Family Inv'rs, LLC v. Oars + Alps LLC*, 2022 WL 245543, at *8 (Del. Ch. Jan. 27, 2022) ("Thus, the anti-bootstrapping rule does not prevent parties from bringing a fraud claim if . . . the breach of contract claim is not well-pled such that there is no breach claim on which to bootstrap the fraud claim.") (quotations omitted). With that, the Court does not discuss the anti-bootstrapping doctrine in its fraud analysis.

## B. PRIVETERRA FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT.

It is well-understood that every contract contains an implied covenant of good faith and fair dealing. The implied covenant requires "'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain."[72] "Beyond its gap filling function, the implied covenant applies 'when a party to the contract is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms.'"[73] "Although contracts often grant wide—if not unfettered—discretion to one party, 'the law presumes that parties never accept the risk that their counterparties will exercise their contractual discretion in bad faith.'"[74]

Courts will not infer that an obligation exists, that "contradicts a clear exercise of an express contractual right."[75] Express contractual language is more persuasive than a party's actions implementing a contract.[76] Courts will infer an obligation

---

[72]   *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985)).

[73]   *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559, at *10 (Del. Ch. Aug. 25, 2021) (quoting *Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 504 n.93 (Del. 2019)).

[74]   *Id.* (quoting *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2008 WL 4182998, at *1 (Del. Ch. Sept. 11, 2008)).

[75]   *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010).

[76]   *Id.* at 1126.

"when the express terms of the contract indicate that the parties would have agreed to the obligation had they negotiated the issue, [so] the plaintiff must advance provisions of the agreement that support this finding in order to allege sufficiently a specific implied contractual obligation."[77]

Our Supreme Court has warned that deploying the implied covenant of good faith and fair dealing:

> Involves a cautious enterprise, inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated. One generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement. We will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.[78]

The covenant will not allow mere "post contractual rebalancing of the economic benefits flowing to the contracting parties."[79] Rather, the covenant applies "only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer. In the Venn diagram of contract cases, the area of overlap is quite small."[80]

---

[77] *Cantor Fitzgerald, L.P. v. Cantor, et al.*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) (footnote omitted).

[78] *Nemec*, 991 A.2d at 1125–26 (internal citations and quotations omitted).

[79] *Id.* at 1127–28.

[80] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

Here, Priveterra claims that the Defendants breached the implied covenant of good faith and fair dealing by rejecting Priveterra's offer to supply funding and entering safeguard proceedings.[81]   But Priveterra doesn't point to an implied, breached obligation.   Instead, Priveterra vaguely suggests that the Defendants breached the good-faith covenant by entering into safeguard proceedings when there were other options on the table.[82]   That's not enough.

General allegations of bad-faith conduct are insufficient to state a breach of the implied covenant of good faith and fair dealing.[83]   And the duty of good faith and fair dealing isn't an equitable remedy for rebalancing economic interests after events that could have been anticipated but were not.[84]

Recall, the parties had crafted a specific LOI provision with set conditions to allow for the type of reimbursement now sought.   Priveterra knew that the Defendants were in talks with creditors and that the Proposed Transaction could have gone belly-up.   Faced with this, Priveterra doesn't identify an unanticipated gap for the implied covenant of good faith and fair dealing to fill.[85]   Accordingly, Priveterra

---

[81]   Compl., ¶ 54.

[82]   *See* Compl., ¶¶ 53–55.

[83]   *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

[84]   *Lonergan v. EPE Holdings, LLC*, 5 A.3d 1008, 1019 (Del. Ch. 2010).

[85]   *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) ("Nor has Wal-Mart identified any implied contract term that it would have the trial court read into the contract. Accordingly, this count fails to state a claim upon which relief may be granted.").

has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

## C. PRIVETERRA'S FRAUDULENT INDUCEMENT CLAIM FAILS.

Fraud consists of the following elements:

(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[86]

There is no elemental difference between fraud and fraud in the inducement.[87]

In the norm, optimistic statements extolling one's own skills, experience, and resources are mere puffery that cannot form the basis of a fraud claim.[88] And fraudulent inducement generally requires a misrepresentation of present facts rather than a statement of future intent.[89]

What's more, to state a claim for fraud, a complainant must plead its elements with particularity as required by Rule 9(b).[90] But the state of mind and knowledge

---

[86] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (cleaned up).

[87] *Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 463 n.34 (Del. Ch. 2024).

[88] *Id*. at 463 (citing *Solow v. Aspect Res., LLC*, 2004 WL 2694916, at *3 (Del. Ch. Oct. 19, 2004)).

[89] *Cercacor Labs., Inc. v. Metronom Health, Inc.*, 2025 WL 1180186, at *9 (Del. Super. Ct. Apr. 23, 2025).

[90] *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *12 (Del. Super. Ct. Jan. 13, 2021) ("The claimant must allege: (1) the time, place, and contents of the false representation, (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representation. When the necessary facts are within the opposing

- 17 -

elements of a fraud claim can be alleged more generally because any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable.[91]

Here, Priveterra avers that Mr. Diamond intimated that negotiations with creditors were well underway and these negotiations would allow the Defendants to stay solvent.[92] At the same time, according to Priveterra, Mr. Diamond and the Defendants knew that they could likely be insolvent by September 2023.[93]

Priveterra's fraud claim fails here because there was no false representation—all agree the Pixium entities were in negotiations with creditors and seemed hopeful of the outcome.[94] The fact that the Pixium parties could likely run out of money in

---

party's control, however, less particularity is required." (cleaned up)).

[91] *Abry P'rs V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) (quoting *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993)).

[92] Compl., ¶ 58.

[93] *Id.*

[94] *See* Hr'g Tr. at 45–46:

> The Court: Your friend said that you have all but conceded that the defendants were, in fact, in negotiations with their creditors. Do you agree with that?
>
> Plaintiff's
> Counsel: We do agree that—well as far as we know, Your Honor, they were in negotiations. As Your Honor is aware, we don't have discovery. We haven't been afforded the opportunity to understand that exactly. However, even if they were in negotiations, the fact that he was—that Mr. Diamond was recounting specifics, was recounting false specifics of those negotiations, that is the false statement . . . .

September 2023 is undoubtedly why the negotiations were occurring in the first place. Priveterra doesn't allege in its complaint that these negotiations never happened or that the Pixium parties had no intention on obtaining financing.

To the extent that Priveterra argues that there were specific misrepresentations made by Mr. Diamond concerning the creditors, and discovery will reveal these misrepresentations, the Complaint is devoid of any specific details about what these misstatements are.[95] So Rule 9 isn't satisfied; there is no information about the contents of those alleged false statements made—something Priveterra clearly has without discovery—in Priveterra's complaint.[96] Discovery isn't a crutch for plaintiffs to lean on as support of an ill-pled fraud claim that lacks the minimal specifics.[97] Priveterra hasn't alleged an actual false misrepresentation to ground its fraud claim. Thus, that claim, too, must be dismissed.

---

[95] *See id.*

[96] *See Valley Joist BD Holdings, LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021) ("The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation.").

[97] *See Airborne Health*, 984 A.2d at 142 ("[T]he plaintiff should be able to say when he was lied to, or what specifically was said to him that was materially misleading by omission. The lack of prior discovery poses no impediment to a plaintiff's ability to plead 'the circumstances constituting fraud.' After all, the plaintiff was there."); *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 988 (Del. Ch. 2000) ("Moreover, plaintiffs' suggestion that their allegations cannot be fully articulated in the absence of discovery belies the fraud-based pleading standard. I know of no Delaware precedent that permits a conclusory allegation to proceed on the basis that later discovery will fill in the purported gaps if only the pleading is allowed to survive a motion to dismiss.").

## V. CONCLUSION

Priveterra relies heavily on the reasonable conceivability standard the Court employs at the motion-to-dismiss stage. But that standard is applied to causes of action that are buttressed by sufficient and well-pled factual allegations[98] and reasonable reads of operative agreements.[99] In this instance, Priveterra has failed to plead a base of facts that allow it to recover under any reasonably conceivable set of circumstances and its attempt to insert language or conditions into the LOI cannot be countenanced.

The Court, therefore, **GRANTS** the Defendants' Motions to Dismiss as to all three of Priveterra's counts in its Complaint.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

Paul R. Wallace, Judge

---

[98] *See Dollard v. Callery*, 185 A.3d 694, 703 (Del. Super. Ct. 2018) ("Delaware's pleading standard under a 12(b)(6) motion to dismiss is minimal, but not meaningless."); *see also IMO the LW & T of Hurley*, 2014 WL 1088913, at *1 (Del. Ch. Mar. 20, 2014) ("Although Delaware's 'reasonable conceivability' pleading standard is minimal, it is not meaningless, and it does not excuse a plaintiff from alleging sufficient factual allegations that, if proven, would entitle the plaintiff to relief.").

[99] *See Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *9 (Del. Super. Ct. Aug. 16, 2021) ("As a question of law, a contract's proper interpretation can be resolved on a pleadings-stage . . . [and] to succeed, the movant's interpretation must be the *only* reasonable construction as a matter of law.")(cleaned up).