**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1857
_____

CHRISTOPHER J. WARE,
                                            Appellant
v.

POLICE OFFICER TODD RILEY;
POLICE OFFICER KIMBERLY DONAHUE
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-10-cv-00629)
District Judge:  Honorable Sue L. Robinson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 1, 2014

Before:  FISHER, VANASKIE and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 8, 2014)

_____

OPINION
_____

PER CURIAM

     Christopher J. Ware appeals from the District Court's entry of judgment in favor

of the defendants following a bench trial.  We will affirm.

1

Ware rented an apartment on the third floor of a home in Wilmington, Delaware. One night in July 2008 (the parties dispute which one, but that detail is not relevant to any issue on review), the Wilmington police department received a call from an alarm company notifying them that the burglar alarm at the residence had activated. Officers Todd Riley, Kimberly Pfaff[1] and Scott Gula responded and found the front door of the residence ajar. Suspecting a burglary in progress, the officers entered the house and eventually reached Ware's locked third-floor bedroom.

Ware was inside laying naked under a blanket on a mattress. He heard the officers' dispatch radios as they approached but did not announce his presence. Riley and Pfaff eventually gained entry to Ware's bedroom and required Ware to identify himself. Ware claims that, after he already had done so twice, Riley asked him his name again and Ware declined to respond. Ware further claims that Riley then knocked him to the ground by pressing his forearm against Ware's neck in what he refers to as a "trachea hold." Riley denies that he did so. Ware also claims that Pfaff rifled through his business card holder after he already handed her his driver's license and that, although he asked for permission to dress several times, the officers ignored him and he remained naked for the duration of this encounter. Pfaff disputes both accounts.

---

[1] This officer is identified as Kimberly Donahue in the complaint, but she apparently has since taken the last name Pfaff. The District Court and the parties refer to her as Pfaff, and we will do the same.

2

Ware filed suit pro se against Riley and Pfaff under 42 U.S.C. § 1983 alleging, inter alia, that they entered his bedroom and seized him, that Riley used excessive force, and that Pfaff searched his business card holder, all in violation of the Fourth Amendment. Following discovery and summary judgment proceedings, the District Court conducted a bench trial[2] and later entered judgment in favor of the defendants. Ware appeals, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

By our count, Ware raises some eighteen claims of trial error and also challenges, in addition to the final judgment, ten of the District Court's pre-trial rulings. Each of Ware's challenges lacks merit.[3]

### A. The Merits of Ware's Claims

Ware raises challenges directed to the District Court's judgment on his four

---

[2] Ware asserts for the first time in his reply brief that he intended to demand a jury trial and believed he had done so. He does not argue even there, however, that the District Court erred in conducting a bench trial. To the contrary, he concedes that he did not properly demand a jury trial and he does not claim that he ever objected to proceeding with a bench trial in the District Court.

[3] Following a bench trial, we review the District Court's findings of fact only for clear error but review legal issues de novo. See In re Frescati Shipping Co., Ltd., 718 F.3d 184, 196 (3d Cir. 2013), cert. denied, 134 S. Ct. 1279 (2014). We review for abuse of discretion the District Court's ruling on discovery matters, case management, and matter of evidence, though we exercise plenary review to the extent that evidentiary rulings involve an interpretation of the Federal Rules of Evidence. See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 268 (3d Cir. 2012), cert. denied, 133 S. Ct. 2025 (2013).

substantive claims.  First, Ware claims that the officers unlawfully entered his bedroom.

The District Court concluded that the entry was lawful because the officers had probable

cause to believe that a burglary was in progress and a burglary in progress triggers the

exigent circumstances exception to the warrant requirement.  See United States v.

Mallory, — F.3d —, No. 13-2025, 2014 WL 4347198, at *8 (3d Cir. Sept. 3, 2014)

("Warrantless searches of the home are presumptively unreasonable unless the occupants

consent or probable cause and exigent circumstances exist to justify the intrusion.")

(quotation marks omitted).  In particular, the District Court concluded that it was

reasonable for the officers to suspect that a burglar was in Ware's bedroom because the

burglar alarm had sounded, the front door stood ajar, there was no one else in the house,

Ware's bedroom door was locked, and no one therein identified themselves when the

officers knocked and announced.[4]

Ware concedes that the officers were justified in entering the house itself, and he

does not challenge the District Court's conclusion that a burglary in progress can

constitute an exigent circumstance.  See, e.g., United States v. McCullough, 457 F.3d

1150, 1164 (10th Cir. 2006) (noting that other Courts of Appeals "unanimously agree . . .

that . . . the exigent circumstances exception [applies] when the officer reasonably

---

[4] Ware contends that the officers did not knock and announce, but both Riley and Pfaff testified that they did (ECF No. 94, N.T. 11/20/13, at 143; ECF No. 95, N.T. 11/21/13, at 189), and the District Court did not clearly err in relying on that testimony.  See Mallory, 2014 WL 4347198, at *7 (adopting standard of review for claims of exigent circumstances).

believes a burglary is in progress"). Instead, he argues that the District Court failed to resolve Riley's and Pfaff's allegedly differing accounts of how the officers gained entry to his bedroom. He also argues that Pfaff's testimony that they may have done so by picking the lock instead of kicking down the door is inconsistent with exigency.

Riley's and Pfaff's testimony on this point, however, did not actually conflict. Riley testified that the officers "forcibly entered the room" and may have "kicked [the door] or pushed against it" but that "I don't remember exactly how." (ECF No. 94, N.T. 11/20/13, at 144.) Pfaff testified that she too did not remember exactly how the officers gained entry but that it was possible one of them may have "manipulated the door without forcing it." (ECF No. 95, N.T. 11/21/13, at 205.) Riley did not testify that the officers actually kicked down the door as Ware alleges, and Riley's testimony that the officers may have pushed against the door does not contradict Pfaff's testimony that they may have manipulated the lock. Nor are we persuaded that exigency necessarily would have required them to immediately kick down the door before attempting to gain entry in some other way.

Second, Ware claims that the officers' seizure of him in his room was unreasonable because he was naked the entire time. The District Court acknowledged that, even if there is probable cause for a seizure, special consideration is required when the seizure is "conducted in an extraordinary manner, unusually harmful to an individual's privacy." Whren v. United States, 517 U.S. 806, 818 (1996). The District

5

Court concluded that the seizure was reasonable because, inter alia, Ware was in his room and shielded from public view, he was not made to strip but merely to remain as he was, and the overall encounter lasted for a short period of time.

Ware's sole challenge to this ruling is that the District Court did not resolve the conflict between his testimony that officers would not let him dress until the end of the encounter (ECF No. 94, N.T. 11/20/13, at 89, 94-95) and Pfaff's testimony that she allowed Ware to dress because she never allows a suspect to "stand around naked while [she is] conducting an investigation" (ECF No. 95, N.T. 11/21/13, at 190).  It is true that the District Court noted this conflict without expressly resolving it, but it was not necessary to do so.  Even if the District Court had accepted Ware's version of events, Ware testified that he remained naked only (1) while police questioned him in his room, (2) during a brief call to his landlord, and (3) while an officer went to a neighbor's residence to verify his identity, which verification Ware testified took "a short time . . . I would say between five and ten minutes." (ECF No. 94, N.T. 11/20/13, at 93.)  Thus, it was not clearly erroneous for the District Court to conclude that Ware remained naked only for a short period of time.  Ware does not argue that the District Court erred in relying on that factor (or any other), and we cannot say that it did.  Cf. L.A. Cnty. v. Rettele, 550 U.S. 609, 614 (2007) (holding a search reasonable where police ordered naked couple out of bed at gunpoint and they remained naked for two or three minutes).

Third, Ware claims that Pfaff unreasonably searched his business card holder for

6

identification after he already handed her his driver's license. Pfaff, by contrast, testified that Ware refused to identify himself and that she searched the holder (which she referred to as a wallet) for his driver's license only thereafter. (ECF No/ 95, N.T. 11/21/13, at 191-92.) The District Court concluded that Pfaff's search for identification was reasonable because Ware refused to reveal his identity and that, even if the search was unreasonable, the call was close enough that Pfaff was entitled to qualified immunity.

Ware raises no challenge to the second of these rulings. As to the first, he argues that the District Court's finding is inconsistent with the alleged admission in "defendants'" answer that he voluntarily handed Pfaff his driver's license before she searched his card holder. (Appellant's Br. at 11.) But the answer he refers to is Riley's (ECF No. 9), not Pfaff's, and Riley testified that he did not see Pfaff search the card holder (ECF No. 94, N.T. 11/20/13, at 148). In Pfaff's answer, she admitted that she "took possession of Plaintiff's driver's license," not that he voluntarily handed it to her. (ECF No. 61 at 2, ¶ 8.) That admission is fully consistent with her testimony and the District Court's findings. Ware also argues that the officers could have ascertained his identity from pieces of mail that were in plain view. Ware offered no evidence to that effect, however, and items of mail bearing his name would not necessarily have identified him as a lawful occupant of the apartment in any event. See United States v. Johnson, 9 F.3d 506, 509 (6th Cir. 1993).

Finally, Ware claims that Riley used excessive force by knocking him to the

7

ground when Ware refused to state his name. Ware testified to that effect at trial. (ECF No. 94, N.T. 11/20/13, at 94.) Riley, by contrast, flatly denied that he even touched Ware and testified that there was "no use of force." (Id. at 149, 151.) Ware's primary argument on this claim is that the District Court failed to make a credibility determination or otherwise resolve this factual dispute. We disagree.

District courts "must find facts specially" following a bench trial, Fed. R. Civ. P. 52(a)(1), but we generally deem findings insufficient under this rule only when they fail to provide a "clear understanding of the basis of the decision," In re Frescati Shipping Co., Ltd., 718 F.3d 184, 196 (3d Cir. 2013) (quotation marks omitted), cert. denied, 134 S. Ct. 1279 (2014). And although district courts generally "should make determinations of witness credibility where appropriate," EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010), such determinations may be implied, see Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 245 (3d Cir. 2007). In this case, it is clear from the District Court's opinion, particularly when viewed in the context of the proceeding as a whole, that the District Court deemed Riley's testimony more credible than Ware's and found that the alleged use of force did not occur.

At closing, defense counsel argued that Ware's testimony was not credible because, inter alia, it was not corroborated by any evidence and the evidence instead supported Riley's testimony that he did not use force. In particular, defense counsel argued that Ware's testimony was not credible because he did not file a formal complaint

8

against Riley, the officers did not file a use-of-force report, and Ware did not require any medical treatment. (ECF No. 95, N.T. 11/21/13, at 244-45, 247.) Then, in its conclusions of law, the District Court wrote:

> Plaintiff testified that force was used after he refused to answer Riley's question about his identity. Riley flatly denies that he touched plaintiff. The court finds plaintiff failed to meet his burden of proof on the issue that it is more likely than not that Riley used excessive force. There is no evidence of any injury to plaintiff and plaintiff did not seek medical attention. Nor was there a use-of-force investigation [by the police department] which is standard procedure when force is used by police officers. Finally, plaintiff testified that he did not seek medical attention and did not file a citizen's complaint regarding Riley's actions.

(ECF No. 96, Dist. Ct. Op. at 15 ¶ 34.) This reasoning closely tracks defense counsel's argument.

Moreover, the District Court recognized in denying Riley's motion for summary judgment on this claim that, if it found that Riley used force, then it would have to determine whether the use of force was excessive under the factors set forth in Graham v. Connor, 490 U.S. 386, 396 (1989). (ECF No. 58 at 12.) The District Court's summary judgment opinion reflects a clear understanding of the circumstances that would prove relevant if it found that Riley used force. The fact that the District Court did not discuss those circumstances or otherwise apply the Graham factors after trial makes it abundantly clear that it found that Riley did not use force at all. That finding was not clearly erroneous, and we reject Ware's other challenges to the District Court's judgment on this

9

claim for the reasons summarized in the margin.[5]

### B. Ware's Remaining Arguments

Ware's remaining claims of pre-trial and trial error lack merit as well. Ware argues that the District Court erred in denying his motion for summary judgment, but a party cannot challenge the denial of summary judgment after a trial on the merits because the denial of summary judgment remains interlocutory and the trial record supersedes the summary judgment record. See Ortiz v. Jordan, 562 U.S. 180, ___, 131 S. Ct. 884, 888-89 (2011).

Ware also raises various challenges to the District Court's exercise of discretion over matters of discovery and evidence. He argues, for example, that the District Court abused its discretion in quashing subpoenas he served on the City of Wilmington and that its ruling effectively prevented him from obtaining any discovery regarding Riley and

---

[5] Ware faults the District Court for failing to apply the Graham factors, but, as just discussed, it was not necessary for the District Court to do so in light of its finding that Riley did not use force in the first place. Ware also faults the District Court's reliance on the lack of a physical injury and medical treatment, but the District Court did not err in seeking some objective corroboration of Ware's claim. Ware argues that defendants laid no foundation for Riley's testimony that use of force generally triggers an investigation, but Riley clearly was testifying from his own experience as a police officer. Ware also argues that the District Court imposed an administrative exhaustion requirement on this claim by relying on the fact that he did not file a written complaint with the police department, but the District Court instead merely found the lack of such a complaint relevant to Ware's claim on the merits. The District Court also entered judgment against Ware on his related supplemental claim of assault under state law, but Ware has not challenged that ruling on appeal and we deem the supplemental claim waived.

Pfaff. Ware is mistaken. On December 22, 2011, the District Court entered an order quashing Ware's third-party subpoenas on the grounds that he could seek the discovery requested therein from Riley and Pfaff themselves and that, if relevant information proved not to be under their control, he could serve a third-party subpoena in the future. (ECF Nos. 21 & 22.) The District Court also extended the discovery deadline for over four months. Ware concedes both that he did not serve written discovery on Riley or Pfaff (or anyone else) within that time and that he did not do so because he misunderstood the deadline's significance. The District Court nevertheless permitted him to depose both Riley and Pfaff after the deadline.

Ware also argues that the District Court abused its discretion in quashing discovery and trial subpoenas he served on his landlord, Howard Sudler. Ware does not state what information or testimony he sought from Sudler or how it would have been relevant to his claims, however, and we discern no conceivable relevance because Sudler did not witness the incident in question and the District Court's rulings did not turn on any factual dispute as to which he could have testified.

Ware also faults the District Court's rulings regarding his alleged video recording of the incident. During Ware's deposition, he testified that he had a video recording of the incident because he heard the officers coming and set up a camera phone to record the encounter before they entered his bedroom. Ware later claimed that he could not retrieve the recording because his phone is inoperable. After Ware refused to produce a copy of

11

the recording or his phone for inspection, defendants filed a motion to dismiss his complaint as a sanction.

The District Court denied that motion, but it later entered an order providing that "[h]aving failed to produce the alleged video recording during discovery, plaintiff shall not be permitted to refer to it or otherwise use it at trial." (ECF No. 73.) Ware abided by that order during his direct testimony. On cross-examination, the District Court permitted defense counsel (over Ware's objection) to impeach him with his deposition testimony that he got out of bed to activate the camera phone because he heard the officers coming but then remained naked and got back into bed instead of taking that opportunity to clothe himself. (ECF No. 94, N.T. 11/20/13, at 113-17.)

Ware argues that it was unfairly prejudicial for the District Court to preclude him from offering evidence of the recording but then to permit defendants to impeach him with his testimony that he had activated a camera phone. We disagree. The District Court acted well within its discretion in precluding Ware from introducing evidence of the alleged recording, and the District Court did so to protect the defendants in light of Ware's discovery violations, not to limit their ability to impeach him.

The final issue we address is Ware's argument that the District Court erred in its treatment of his four witnesses—i.e., Isaac Vaughn, Christopher Brown, Officer Gula, and Naasih Faheen. Ware argues that the District Court failed to mention the testimony of Vaughn, Brown and Faheen, but we have reviewed these witnesses' testimony (ECF

12

No. 94, N.T. 11/20/13, at 20-46, 64-83) and it was unnecessary for the District Court to refer to it because they did not witness the incident in question and their testimony was not directly relevant to any of the issues discussed above. Ware also argues that the District Court should have disregarded Officer Gula's testimony that he did not recall the incident and should have found instead that Gula guarded the front door while Riley and Pfaff questioned Ware in his room. But Ware neither specifies the significance of that alleged fact nor cites any record evidence making the District Court's acceptance of Gula's testimony clearly erroneous, and we have found none. Ware's remaining arguments suffer from similar deficiencies and, having reviewed all of them in light of the record, we conclude that they do not require further discussion.

III.

For the foregoing reasons, we will affirm the judgment of the District Court. Ware's motion to file an untimely and overlength brief is granted.[6]

---

[6] Ware, who is a relatively sophisticated litigant by pro se standards, obtained an extension of time to file his opening brief but then submitted it twelve days after the extended deadline. We do not condone that delay or the fact that Ware has not even attempted to explain it. In this instance, however, we exercise our discretion to decide this appeal on the merits because defendants did not file a motion to dismiss the appeal in lieu of their brief on the merits and the appeal is now fully briefed.

13