# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| M. SOUL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No.: K25C-01-026 NEP** |
| | ) | |
| ROBIN R. CHRISTIANSEN, MAYOR | ) | |
| OF DOVER, DELAWARE; CITY OF | ) | |
| DOVER; DOVER POLICE | ) | |
| DEPARTMENT; ADT SECURITY | ) | |
| SERVICES LLC, INC.; KENT | ) | |
| COUNTY, DELAWARE; PFC | ) | |
| BURTON; PTLM SHEPHERD; SGT | ) | |
| GOTT; PFC SPENCE; JOHN DOE(S); | ) | |
| AND KAY SASS, | ) | |
| | ) | |
| **Defendants.** | ) | |

Submitted:  February 13, 2026
Decided:  May 11, 2026

## ORDER[1]

*Upon the Municipal Defendants' Motion to Dismiss the Second Amended Complaint*

**GRANTED**

*Upon ADT Security Services, Inc.'s Motion for Judgment on the Pleadings*

**GRANTED**

---

[1] Citations in the form of "D.I. ___" refer to docket items.

Upon consideration of dispositive motions filed by Defendants,[2] the Court finds as follows:

1.  On January 17, 2025, M. Soul ("Soul") filed a Complaint and an application to proceed *in forma pauperis*.[3]  The Complaint asserted federal civil rights claims under 42 U.S.C. §§ 1981 and 1983 and related state law causes of action arising from an alleged warrantless entry into Soul's residence on February 9, 2023.[4]  The affidavit attached indicated that Soul was unemployed and had no income or assets other than her home.[5]

2.  On February 3, 2025, Soul filed an Amended Complaint as of right pursuant to Superior Court Civil Rule 15(a).[6]  The Amended Complaint removed the United States of America as a defendant, omitted the federal civil rights claims, and clarified certain factual allegations and the roles of individual defendants, while leaving the underlying claims largely unchanged.[7]

3.  Soon after, the Court learned of material nondisclosures made by Soul in her affidavit, namely, that Soul had represented in prior litigation that she receives disability payments through the U.S. Department of Veterans Affairs, which she failed to include in her January 17 application to proceed *in forma pauperis*.

4.  On March 21, 2025, the Court issued an Order allowing Soul the opportunity to file a revised affidavit to accurately reflect all income she receives.[8]

---

[2] For clarity, the Court's disposition encompasses two dispositive filings: (i) the Municipal Defendants' (defined later) Motion to Dismiss the Second Amended Complaint pursuant to Superior Court Civil Rule 12(b)(6), and (ii) Defendant ADT Security Services LLC, Inc.'s Motion for Judgment on the Pleadings pursuant to Rule 12(c).  Both motions challenge the same operative pleading and are governed by materially identical standards.

[3] D.I. 1, 5.

[4] Compl. 1, 5–7 (D.I. 1).

[5] D.I. 5.

[6] *See* Am. Compl. (D.I. 6).

[7] D.I. 6.  The claims asserted in the Amended Complaint were later carried forward, with additional detail, in the Second Amended Complaint.

[8] D.I. 7.

On April 2, 2025, upon review of Soul's revised affidavit, the Court denied the revised application to proceed *in forma pauperis*.[9]

5.      On July 17, 2025, Soul filed a Second Amended Complaint ("SAC") asserting federal civil rights claims and various state law causes of action against multiple municipal and private defendants (collectively, "Defendants"), including ADT Security Services LLC, Inc. ("ADT").[10]  The SAC alleges that, on February 9, 2023, Soul's home alarm was triggered, prompting a response by the Dover Police Department ("DPD"), which, according to Soul, resulted in a warrantless entry into her residence without exigent circumstances and with the assistance of ADT.[11]  Soul further alleges that certain municipal employees, including Kay Sass, participated in communications that led to the alteration or omission of material facts in DPD's reports, and that ADT subsequently manipulated digital logs to conceal the circumstances of the entry.[12]

6.      The SAC names as defendants Dover Mayor Robin R. Christiansen ("Christiansen"), the City of Dover ("the City"), DPD, Kent County, individual police officers, ADT, unidentified John Doe(s), and Kay Sass ("Sass"), and asserts causes of action including: (i) a Fourth Amendment claim under § 1983 for unlawful entry; (ii) invasion of privacy and breach of contract under Delaware law; (iii) racial discrimination under 42 U.S.C. § 1981; (iv) negligence; (v) intentional infliction of emotional distress; (vi) malicious prosecution; and (vii) debt collection harassment under federal law.[13]  Soul alleges that Defendants' conduct caused emotional distress

---

[9] *See* D.I. 8–9.
[10] Second Am. Compl. 1–6 (D.I. 15).  ADT was incorrectly named in the SAC—its correct name is ADT LLC. (D.I. 87).
[11] *Id.* at 2–3.
[12] *Id.*
[13] *Id.* at 3–6.

and financial loss, and seeks compensatory and punitive damages, as well as costs and other relief.[14]

7.     On August 7, 2025, Defendants Christiansen, the City, DPD, PFC Burton, PTLM Shepherd, SGT Gott, PFC Spence, and Sass (collectively, the "Municipal Defendants"), filed a Motion to Dismiss the SAC pursuant to Superior Court Civil Rule 12(b)(6).[15]  In their motion, the Municipal Defendants argue that Soul has failed to state any claim upon which relief may be granted.[16]  Specifically, the Municipal Defendants contend that Soul's Fourth Amendment claim fails because the responding officers acted pursuant to exigent circumstances created by a triggered alarm and an unsecured door;[17] that Soul's racial discrimination claim is conclusory and unsupported by factual allegations of discriminatory intent;[18] and that Soul's state law claims for negligence, intentional infliction of emotional distress, and malicious prosecution are barred by the Delaware County and Municipal Tort Claims Act (the "DCMTCA"), 10 *Del. C.* § 4011, because Soul has not alleged property damage, bodily injury, or death.[19]

8.     The Municipal Defendants further argue that Soul has failed to state a viable § 1983 claim against the City because the SAC does not allege a policy or custom sufficient to establish municipal liability under *Monell v. Department of Social Services of the City of New York*,[20] and that Soul has not alleged personal involvement sufficient to sustain claims against Christiansen.[21]  Additionally, the Municipal Defendants assert that Soul's claims against Sass are time-barred under

---

[14] *Id.* at 6.
[15] D.I. 53.
[16] Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. 2–5 (D.I. 53).
[17] *Id.* at 2–3.
[18] *Id.* at 3–4.
[19] *Id.* at 4.
[20] 436 U.S. 658 (1978).  *See* Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. 4–5.
[21] *Id.* at 5.

the applicable two-year statute of limitations, as she was first named in the SAC filed more than two years after the underlying incident.[22]

9.    On August 26, 2025, Soul filed an Opposition to the Municipal Defendants' Motion to Dismiss the SAC.[23]  In her Opposition, Soul largely reiterates the factual allegations set forth in the SAC, again asserting that the February 9, 2023, incident involved a false alarm, that DPD entered her residence without a warrant or exigent circumstances, and that Defendants subsequently engaged in a coordinated effort to conceal the nature of that entry through altered reports and records.[24]

10.    Soul argues that the Municipal Defendants' reliance on exigent circumstances is misplaced, contending that a triggered alarm and an unlocked door, without more, do not justify warrantless entry.[25]  She further maintains that her pleadings sufficiently allege a Fourth Amendment violation, municipal liability, and personal involvement by Christiansen, and that her racial discrimination claim is supported by allegations of disparate treatment and a broader pattern of conduct.[26] Soul also disputes the applicability of immunity under the DCMTCA, asserting that Defendants' conduct falls within statutory exceptions for wanton or malicious conduct, and contends that her claims against Sass are timely under theories of equitable tolling and continuing violation.[27]

11.    On November 6, 2025, ADT filed its Answer to the Second Amended Complaint, denying liability and asserting numerous affirmative defenses, including failure to state a claim, comparative fault, and contractual limitations on Soul's

---

[22] Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. 5 (D.I. 53).
[23] D.I. 63.
[24] Pl.'s Opp'n to Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. 1–3 (D.I. 63).
[25] See id. at 4.
[26] Id. at 5–7.
[27] Id. at 9–10.

claims.[28]  Thereafter, on December 22, 2025, ADT filed a Motion for Judgment on the Pleadings pursuant to Superior Court Civil Rule 12(c).[29]

12. In its motion, ADT argues that Soul's claims are barred by the parties' contract, which requires suit to be brought within one year of the alleged loss and limits any recoverable damages to $500.[30]  ADT further contends that it complied with its contractual obligations by receiving the alarm signal, attempting verification calls, and notifying law enforcement, and therefore cannot be liable for breach of contract or related claims.[31]  ADT also argues that Soul's tort and statutory liability claims fail as a matter of law,[32] and that it did not engage in any conduct constituting an invasion of privacy.[33]

13. On January 20, 2026, the Municipal Defendants submitted a letter to the Court providing subsequent authority in support of their Motion to Dismiss the SAC.[34]  The provided authority, *Case v. Montana*,[35] decided January 14, 2026, addresses the scope of the Fourth Amendment's emergency-aid exception to the warrant requirement.

14. On January 22, 2026, Soul filed an Opposition to ADT's Motion for Judgment on the Pleadings.[36]  Soul primarily reiterates the factual allegations underlying the SAC and asserts that ADT breached its contractual obligations, that the warrantless entry into her residence lacked sufficient exigency, and that

---

[28] Def. ADT LLC's Answer to Second Am. Compl. 1, 9–11 (D.I. 91).
[29] D.I. 94.
[30] Def. ADT LLC's Mot. for J. on the Pleadings 3–5 (D.I. 94).
[31] *Id.* at 5.
[32] *Id.* at 6.
[33] *Id.* at 5–6.
[34] D.I. 100.
[35] 146 S. Ct. 500 (2026).
[36] D.I. 101. Soul's Opposition was untimely under the Court's imposed deadline of January 9, 2026.  *See* D.I. 96.  The Court issued a delinquent notice to Soul permitting her ten days to respond on January 12, 2026, and Soul filed her Opposition, which the Court accepted, on January 22, 2026.  *See* D.I. 101.

Defendants engaged in discriminatory and otherwise unlawful conduct.[37] Soul further argues that the one-year limitations period on bringing suit pursuant to breaches of contract is void as contrary to public policy and inconsistent with Delaware's longer statutory limitations period, and that the contractual damages cap is unreasonable and unconscionable in light of various harms.[38] Additionally, to support her argument that the DCMTCA does not bar her state law claims, Soul alleges that "property-damage-like loss of security and emotional distress" should be treated as falling within the "property damage, bodily injury, or death" exceptions to the municipal immunity conferred by the DCMTCA.[39] Soul does not address the subsequent authority submitted by the Municipal Defendants in support of their Motion to Dismiss.

15. On September 22, 2025, and February 13, 2026, the Court heard oral argument on the parties' motions and took the matter under advisement.[40]

16. As a preliminary matter, the Court first addresses the procedural propriety of the SAC. Superior Court Civil Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."[41] Otherwise, a party may amend only by leave of court or by written consent of the adverse party.[42] Here, Soul filed an initial complaint and thereafter amended once as of right.[43] Soul's subsequent filing of the SAC, without

---

[37] Opp'n to Def. ADT LLC's Mot. for J. on the Pleadings (D.I. 101).
[38] According to Soul, some of the harms that render the $500 damages cap unreasonable and unconscionable include "fear of hidden surveillance," DPD officers wearing shoes in a "no-shoes zone," and "sanitary harms" caused by an "unsanitary duty [sic] police dog on premises . . . ." *Id.* at 5.
[39] *Id.*
[40] D.I. 81, 110.
[41] Del. Super. Ct. R. 15(a).
[42] *Id.*
[43] *See* D.I. 1, 6.

leave of Court, was procedurally improper.[44] Nevertheless, the record reflects that Defendants responded to the SAC by filing dispositive motions and an answer without objecting to the procedural defect or seeking to strike the pleading.[45] By engaging the merits of the SAC without raising Rule 15(a), Defendants have waived any objection to its procedural impropriety. Accordingly, the Court treats the SAC as the operative pleading for purposes of resolving the pending motions.

17. The Court also notes that the parties' briefing evaluates Soul's federal claims under the "plausibility" standard articulated in *Bell Atlantic Corp. v. Twombly*[46] and *Ashcroft v. Iqbal*.[47] However, that is not the governing pleading standard in Delaware. This Court applies the more liberal "reasonable conceivability" standard when assessing a motion to dismiss under Superior Court Civil Rule 12(b)(6), under which a complaint will survive if the plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof.[48] Importantly, this standard applies even to federal claims brought pursuant to 42 U.S.C. §§ 1983 and 1981.[49] Accordingly, while federal precedent may be instructive as to the substantive elements of Soul's federal causes of action,[50] the Court evaluates the sufficiency of the pleadings under Delaware's notice pleading framework rather than the heightened federal plausibility standard.

---

[44] *See Reylek v. Albence*, 2023 WL 142522, at *6–7 (Del. Super. Jan. 10, 2023).

[45] *See* D.I. 53, 91, 94.

[46] 550 U.S. 544, 570 (2007).

[47] 556 U.S. 662, 678 (2009).

[48] *See Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011); *see also Dufresne v. Camden-Wyoming Fire Co.*, 2020 WL 2125797, at *2 (Del. Super. May 5, 2020).

[49] *See Dufresne*, 2020 WL 2125797, at *2; *see also Dollard v. Callery*, 185 A.3d 694, 703–04 (Del. Super. 2018) (reviewing a § 1983 claim and holding that "settled conflict of laws principles require that [the Delaware Superior Court] apply its own procedural rules, including pleading rules, to all claims, even those arising under federal law.").

[50] *Dufresne*, 2020 WL 2125797, at *10 n. 98 (acknowledging that "Delaware courts look to pronouncements of federal courts as to federal substantive law.").

18.     In the instant case, the Municipal Defendants have submitted a Rule 12(b)(6) motion to dismiss. A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[51] In ruling on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[52] In considering such a motion, "the court will accept all well-pleaded allegations as true."[53] To be well-pleaded, a complaint must include specific allegations of fact,[54] and the Court's review is limited to the well-pleaded allegations in the complaint.[55] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle [her] to relief."[56] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[57]

19.     ADT has submitted a Rule 12(c) motion for judgment on the pleadings. The Court cannot grant judgment on the pleadings unless, after drawing all reasonable inferences in favor of the non-moving party, no material factual dispute exists and the movant is entitled to judgment as a matter of law.[58] In resolving a Rule 12(c) motion, the Court accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-movant.[59]

---

[51] Del. Super. Ct. Civ. R. 12(b)(6).
[52] *Doe v. Cahill*¸ 884 A.2d 451, 458 (Del. 2005).
[53] *Spence v. Spence*, 2012 WL 1495324, at *2 (Del. Super. Apr. 20, 2012) (citing *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).
[54] *Id.* at *2 (citing *White v. Panic*, 783 A.2d 543, 549 (Del. 2001)). *Cf. White*, 783 A.2d at 549 ("At the motion to dismiss stage . . . '[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences.'") (quoting *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000)).
[55] *Cahill*, 884 A.2d at 458 (citing *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d 59, 65 (Del. 1995) (citing *In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319, 326 (Del. 1993))).
[56] *Id.* (citing *Spence*¸ 396 A.2d at 968).
[57] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).
[58] Del. Super. Ct. Civ. R. 12(c).
[59] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

20.     "The standard for a motion for judgment on the pleadings is almost identical to the standard for a motion to dismiss."[60] As such, the Court accords the party opposing a Rule 12(c) motion the same benefits as a party defending a Rule 12(b)(6) motion.[61] Given that the Municipal Defendants' 12(b)(6) motion and ADT's 12(c) motion challenge the same operative pleading and are governed by materially identical standards, the Court will consider these motions together in assessing the sufficiency of the SAC.

21.     Soul's allegations, taken as true for purposes of this Order, are as follows: On February 9, 2023, ADT alerted DPD that Soul's home alarm had been triggered.[62] ADT then relayed the alarm signal to DPD and assisted the responding officers in entering Soul's home.[63] The responding officers—PFC Burton, PTLM Shepherd, SGT Gott, and PFC Spence—searched every room of the residence, leaving lights and closet doors open.[64] Afterward, Sass, an employee of the Mayor's Office who had communicated with Soul about her alarm and home security setup, communicated with municipal staff, and an unidentified individual (John Doe) then altered the DPD field report to omit that the door alarm had been triggered and that doors were left open.[65] ADT further manipulated its digital logs and time stamps to conceal that officers had entered through the side door, left interior doors open, and changed the alarm records from doors to windows.[66] Soul, an African American

---

[60] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Aug. 16, 2021) (quoting *Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014) (internal quotation marks omitted)).
[61] *E.g.*, *Alcoa World Alumina LLC v. Glencore Ltd.*, 2016 WL 521193, at *6 (Del. Super. Feb. 8, 2016), *aff'd sub nom.*, *Glencore Ltd. v. St. Croix Alumina, LLC*, 2016 WL 6575167 (Del. Nov. 4, 2016).
[62] Second Am. Compl. 2 (D.I. 15).
[63] *Id.* at 3.
[64] *Id.*
[65] *Id.*
[66] *Id.*

homeowner, avers that racial bias contributed to the dismissive and negligent handling of her complaints.[67]

22. Soul brings seven enumerated legal claims:

(1) DPD's warrantless entry into Soul's home violated Soul's Fourth Amendment rights under 42 U.S.C. § 1983.

(2) ADT's manipulation of its digital logs and security records constituted a breach of contract and an invasion of privacy.

(3) Defendants' actions constituted unlawful racial discrimination under 42 U.S.C. § 1981.

(4) Defendants breached their duty of care to "monitor accurately, supervise employees, and respect constitutional rights," constituting negligence.

(5) Defendants' actions constituted intentional infliction of emotional distress.

(6) Defendants maliciously subjected Soul to "unwarranted 'welfare checks,' baseless investigations, and false reports [to] intimidate and harass her," allegedly constituting malicious prosecution.

(7) ADT's referral of a disputed debt to collections and the subsequent debt-collector telephone calls constituted harassment and false representation of a debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

23. Soul's prayer for relief requests $75,000 in compensatory damages; punitive damages; damages for mental anguish, insomnia, anxiety, and ongoing emotional harm; costs including filing fees; and any additional relief the Court sees fit to grant.[68]

---

[67] *Id.*

[68] Second Am. Compl. 6 (D.I. 15).

24.     The Court first notes that Soul may not maintain an action against the "John Doe" Defendants employed by the Dover Mayor's Office or DPD. Any claim against an unnamed defendant must be dismissed.[69] Thus, all claims against these Defendants fail.

25.     The Court also notes that Soul may not maintain claims against Kent County. The record does not reflect that Soul filed a praecipe for service upon Kent County or otherwise perfected service on Kent County as a separate defendant. Regardless, Kent County is a separate governmental entity from the City and DPD, and the SAC does not allege facts showing that Kent County had any role in the challenged conduct by the Municipal Defendants. The only allegations directed specifically at Kent County—that it has "[s]upervisory authority over county-level enforcement and municipal cooperation[]"[70] and that it "negligently trained municipal staff and officers[]"[71]—are conclusory and unsupported by any facts tying Kent County to the alleged conduct of the Municipal Defendants. Likewise, neither Opposition filed by Soul against the Defendants' 12(b)(6) and 12(c) motions identifies any independent claim against Kent County. Accordingly, all claims against Kent County are dismissed.

26.     The Court next addresses Soul's Fourth Amendment claim brought pursuant to 42 U.S.C. § 1983. "[W]arrants are generally required to search a person's home or his person *unless* the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."[72] Courts applying that principle have held that a triggered residential alarm may create the requisite exigency to justify a limited

---

[69] *Damiani v. Gill*, 2015 WL 353914, at *1 (Del. Super. Jan. 28, 2015) (citing *Mohl v. Doe*, 1995 WL 339099, at *1–2 (Del. Super. May 11, 1995)).
[70] Second Am. Compl. 2 (D.I. 15).
[71] *Id.* at 5.
[72] *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) (emphasis added) (citations omitted).

warrantless entry to investigate a potential emergency.[73]  This Court has also recognized the "Emergency Doctrine," wherein police may, in appropriate circumstances, make an otherwise illegal entry if there is an immediate need for the assistance of police to protect life or property.[74]  Here, the facts alleged in the SAC indicate that responding officers were dispatched after Soul's residential alarm was triggered, signaling a potential burglary or emergency.  Moreover, Plaintiff admitted in both her initial complaint and her first amended complaint that she had left her exterior door unlocked.[75]  Those facts bring this case within the established line of authority recognizing that a triggered residential alarm, with other circumstances present such as an unlocked door, creates an objectively reasonable basis for officers to enter a home without a warrant.[76]  The Court's conclusion in this regard is further supported by the United States Supreme Court's recent decision in *Case v. Montana*,[77] which held that officers may enter a home without a warrant where they have "an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury."[78]  Although *Case* was decided in a criminal context and did not involve the activation of a residential alarm, its reasoning signals a shift away from stringent requirements to justify warrantless entries where circumstances dictate otherwise.  In the instant case, the Court finds

---

[73] *See, e.g., Ware v. Riley*, 25 F. Supp. 3d 492, 500 (D. Del. 2014), *aff'd*, 587 Fed. Appx. 705 (3d Cir. 2014) (unpublished) (triggered alarm and open door created exigency and probable cause for a warrantless entry); *Reardon v. Wroan,* 811 F.2d 1025, 1030 (7th Cir. 1987) (exigent circumstances found where alarm triggered, rear door unlocked, and house was dark); *United States v. Tibolt*, 72 F.3d 965, 970–71 (1st Cir. 1995), *cert. denied*, 518 U.S. 1020 (1996) (call reporting burglary in progress and unlocked door created exigent circumstances justifying warrantless entry); *United States v. Porter*, 288 F. Supp. 2d 716, 718–722 (W.D. Va. 2003) (exigent circumstances found where alarm activated and officers found rear door unlocked).

[74] *State v. Garnett*, 2021 WL 6109797, at *4 (Del. Super. Dec. 23, 2021) (citing *Guererri v. State*, 922 A.2d 403, 406 (Del. 2007)).

[75] Compl. 4 (D.I. 1); Am. Compl. 2 (D.I. 6).

[76] *See supra* note 73.

[77] 146 S. Ct. 500 (2026).

[78] *Id.* at 505.

13

that the officers' entry into Soul's home was objectively reasonable.  Accordingly, Soul's Fourth Amendment claim also fails.

27.     Soul's racial discrimination claim brought pursuant to 42 U.S.C. § 1981 likewise fails.  "To prevail [on a § 1981 racial discrimination claim,] a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right."[79]  Here, the SAC fails at the threshold. Although the SAC contains a passing assertion that Soul is an "African American homeowner,"[80] she offers no factual allegations suggesting that similarly situated individuals of a different race were treated more favorably or that Defendants' conduct was motivated by racial animus.  Such conclusory assertions, unsupported by specific factual allegations, are insufficient to state a claim under § 1981.[81]

28.     Turning to the state law claims directed toward the Municipal Defendants—(4) negligence, (5) intentional infliction of emotional distress, and (6) malicious prosecution—Soul may not maintain those claims against DPD or the City.  The DCMTCA gives government entities broad immunity from suit on "any and all tort claims seeking recovery of damages."[82]  10 *Del. C.* § 4012 contains three

---

[79] *Robinson v. Hertrich Fam. of Automobile Dealerships, Inc.*, 2026 WL 63462, at *8 (D. Del. Jan. 8, 2026) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

[80] Second Am. Compl. 3 (D.I. 15).

[81] *Cf. Malachi v. Sosa*, 2011 WL 2178626, at *3 (Del. Super. May 25, 2011) (finding that, in a § 1981 action, because the plaintiff did not allege he was treated differently because of his race, his § 1981 claim fails).  In the "Factual Allegations" portion of the SAC, Soul makes a lone assertion that she is "an African American homeowner" and "believes racial bias contributed to the dismissive and negligent handling of her complaints."  Second Am. Compl. 3 (D.I. 15). However, Soul has failed to provide *any* factual allegations supporting her claim that "racial bias contributed to the dismissive and negligent handling of her complaints[]" or that Defendants "failed to provide [Soul] the same level of investigation or support given to other homeowners." *Id.* at 3, 4.

[82] 10 *Del. C.* § 4011.

14

narrowly drawn[83] exceptions to this immunity. "The activities enumerated in § 4012 are an exclusive list and are the only activities to which municipal immunity is waived."[84] Soul has failed to plead any such exception within the SAC.[85] As such, Soul's claims against these Defendants fail.

29. For similar reasons, Soul is barred from bringing her claims against the named government employee Defendants. 10 *Del. C.* § 4011(c) does allow for the personal liability of government employees, but only in carefully circumscribed circumstances. Most relevant here, the acts or omissions complained of must "caus[e] property damage, bodily injury, or death[.]"[86] The SAC fails to indicate that she suffered either property damage or bodily injury from the actions of the named government employee Defendants.[87] Instead, Soul claims to have suffered severe emotional distress. Emotional distress is not "bodily injury" in the context of the Tort Claims Act.[88] Since Soul has not alleged injury waiving these defendants'

[83] *Washington v. Wilmington Police Dep't*, 1995 WL 654158, at *3 (Del. Super. Sept. 18, 1995); *see also McCaffrey v. City of Wilmington*, 133 A.3d 536, 547 (Del. 2016) (noting that "exceptions to immunity are narrowly construed[.]") (citing *Walls v. Rees*, 569 A.2d 1161, 1167 (Del. 1990)).
[84] *Washington*, 1995 WL 654158, at *2 (citing *Sussex County v. Morris*, 610 A.2d 1354, 1357 (Del. 1992)).
[85] The burden rests with a plaintiff to demonstrate such an exception. *Toner v. Meyer*, 2020 WL 5837649, at *2 (Del. Super. Oct. 1, 2020) (citing *Lewandowski v. City of Wilmington*, 2017 WL 3264037, at *2 (Del. Super. July 31, 2017); *Gattis v. City of Wilmington*, 2003 WL 1365838, at *2 (Del. Super. Mar. 17, 2003)).
[86] 10 *Del. C.* § 4011(c).
[87] The Court notes that, in her Opposition to the Municipal Defendants' Motion to Dismiss, Soul characterizes "interference with [her] security system" as a form of "property injury." Pl.'s Opp'n to Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. 10 (D.I. 63). However, the SAC alleges that Soul "incurred no costs to repair security equipment," and the SAC's prayer for relief does not seek damages for bodily injury or property damage. Second Am. Compl. 4, 6 (D.I. 15). Moreover, as discussed later in this opinion, a party may not amend its pleadings through briefing on a motion to dismiss. *See infra* note 116.
[88] *Dickerson v. Phillips*, 2012 WL 2236709, at *2 (Del. Super. June 13, 2012) ("emotional distress and related injuries do not constitute 'bodily injury' as defined by the Tort Claims Act under Delaware law." (citing *Sekscinski v. Harris*, 2006 WL 509541, at *3 (Del. Super. Jan. 18, 2006))); *accord King v. Roberts*, 2014 WL 4732306, at *7 (D. Del. Sept. 19, 2014) (applying Delaware case law).

immunity, Soul may not maintain an action against them.[89]  Accordingly, Soul's claims against Christiansen, Sass, and the named DPD officers will be dismissed.

30.  Given the foregoing analysis, Soul's only remaining claims—(2) invasion of privacy and breach of contract, (5) intentional infliction of emotional distress, (6) malicious prosecution, and (7) debt collection harassment—pertain to ADT.  Those claims are time-barred.  The contract governing Soul's relationship with ADT expressly provides that "[n]o suit or action shall be brought against ADT after the shorter of (1) one year after the date of loss or (2) the time allowed by law."[90]  The alleged conduct giving rise to Soul's claims occurred on February 9, 2023,[91] yet Soul did not initiate the instant action until well over one year later.  Delaware courts routinely enforce such contractual limitations provisions, as consistent with public policy and the principle of freedom of contract.[92]  Here, the SAC does not allege any facts that would render the contractual limitations period unenforceable, nor does it advance any theory (e.g., unconscionability) to avoid its application.  Accordingly, the Court finds that Soul's claims against ADT are barred by the parties' agreement, and that the contractual bar is dispositive.  Moreover, even if Soul's claims against ADT were not barred by the contractual limitations period, they would independently fail based on the pleadings, and the Court will therefore address them in the alternative.

31.  First, Soul's invasion of privacy claim fails.  In support of this claim, Soul alleges that, by "altering logs to hide police entry and fail[ure] to report

---

[89] *See Davis v. Town of Georgetown*, 2001 WL 985098, at *9 (Del. Super. Aug. 22, 2001).
[90] Ex. A, ¶ F, pg. 4 (D.I. 91).
[91] Second Am. Compl. 2 (D.I. 15).
[92] *See Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc.*, 2007 WL 3360036, at *4 (Del. Super. Apr. 30, 2007) (finding an alarm monitoring company's one-year limitation provision enforceable); *Donegal Mutual Insurance Co. v. Tri-Plex Security Alarm Systems*, 622 A.2d 1086 (Del. Super. 1992); *Nardo v. CloudScale365 Group, Inc.*, 2022 WL 1025851, at *4 (Del. Super. Mar. 31, 2022).

accurately that doors remained open and no window alarms sounded," ADT "invaded [Soul's] privacy and eroded her trust and confidence in home security."[93] Delaware recognizes four torts related to invasion of privacy: (i) intrusion on the plaintiff's physical solitude; (ii) publication of private matters violating the ordinary decencies; (iii) putting plaintiff in a false position in the public eye; and (iv) appropriation of some element of plaintiff's personality for commercial use."[94] Soul does not specify which of these torts is implicated by these facts. As to the allegations against ADT, however, only the first two are relevant, and neither entitles Soul to relief. ADT did not itself intrude on a private seclusion, and merely exposing Soul to a risk of intrusion by others does not create liability for the first variety of privacy invasion.[95] Likewise, Soul's allegations against ADT fail to support a claim that ADT published private matters violating the ordinary decencies: liability under this prong cannot attach when the private matters shared are communicated to a small group, such as, in this case, law enforcement dispatchers—even if the recipients then communicate them to a broader population.[96] Accordingly, the SAC does not plead a reasonably conceivable invasion of privacy claim against ADT.

32. Soul also contends, in connection with the same events, that ADT breached its contract with Soul.[97] "In order to survive a motion to dismiss for failure

---

[93] Second Am. Compl. 4 (D.I. 15).

[94] *Fanean v. Rite Aid Corp. of Delaware, Inc.*, 984 A.2d 812, 821 (Del. Super. 2009) (citing *Barbieri v. News-Journal Co.*, 189 A.2d 773, 774 (Del. 1963)); *accord Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992) (citations omitted).

[95] *Barker*, 610 A.2d at 1350.

[96] *See Poulos v. City of New Castle*, 2014 WL 7205169, at *5 (D. Del. Dec. 15, 2014) ("[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons," and therefore not a privacy tort under Delaware law to communicate derogatory information to federal agents in connection with security clearance and criminal investigations) (quoting *Martin v. Baehler*, 1993 WL 258843, at *2 (Del. Super. May 20, 1993)); *see also Spence v. Cherian*, 135 A.3d 1282, 1288 (Del. Super. 2016) (disclosure of plaintiff's HIV status to his mother was not a valid basis for an invasion of privacy suit because his status was not widely publicized).

[97] Second Am. Compl. 4 (D.I. 15).

to state a breach of contract claim, the plaintiff must demonstrate: first the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[98] Such a claim must "alleg[e] *specific contractual obligations* of the defendant, describe[] how [the] defendant's conduct constituted a breach of those obligations, and articulate[] damages resulting from the breach."[99] Soul has not identified any *specific* contractual obligations that ADT violated. Consequently, Soul's contractual claim against ADT would fail even in the absence of the contractual limitations period.

33. Soul has also failed to state a claim against ADT for intentional infliction of emotional distress ("IIED"). "A claim for [IIED] . . . requires proof that the [defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress."[100] In light of the fact that intent may be averred generally,[101] the Court's principal concern in evaluating Soul's IIED claim is whether any act committed by ADT was sufficiently outrageous to support an IIED claim. "If reasonable minds may differ, the question of whether the conduct is extreme and outrageous is for the jury."[102] This principle is not a free pass for plaintiffs, however. "It is for the court to determine, in the first instance, whether the defendant's conduct may *reasonably* be regarded as so extreme and outrageous as to permit recovery."[103] Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[98] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted).
[99] *Boissoneault v. Delaware Podiatric Medicine, P.A.*, 2024 WL 5055538, at *3 (Del Super. Dec. 9, 2024) (citing *VLIW Tech., LLC*, 840 A.2d at 612–13) (emphasis supplied).
[100] *Dollard*, 185 A.3d at 704 (quoting *Hunt ex rel. DeSombre v. Dept. of Safety & Homeland Sec.*, 69 A.3d 360, 367 (Del. 2013) (some alterations in original)).
[101] Super. Ct. Civ. R. 9(b).
[102] *Hunt,* 69 A.3d at 367.
[103] *Dollard*, 185 A.3d at 704 (quoting *Hunt*, 69 A.3d at 367) (emphasis supplied).

18

regarded as atrocious, and utterly intolerable in a civilized community."[104] "Even if the alleged conduct constitutes 'tortious or . . . criminal' acts toward the plaintiff, it does not necessarily, by itself, rise to the level of 'extreme and outrageous[.]'"[105]

34.     Soul grounds her IIED theory in the allegation that "[ADT] willfully orchestrated an unlawful home invasion, manipulated records, and then stonewalled [Soul's] attempts to seek redress . . . ."[106] Those allegations do not state a claim for IIED.  Even accepting the allegations in the SAC as true, Soul alleges, at most, that ADT received an alarm signal, contacted law enforcement, assisted DPD in entering her home, and later altered or failed to accurately maintain security records.  Those allegations may reflect Soul's dissatisfaction with ADT's alarm-monitoring services and its later handling of her complaints, but they do not describe conduct so outrageous in character or extreme in degree such that it is actionable as IIED.  Indeed, Delaware courts have refused to entertain prospective IIED claims in instances involving conduct that, in the Court's view, is more outrageous than that in the instant case.[107] The characterization that ADT "orchestrated" a home invasion does not transform a standard residential alarm response and alleged recordkeeping dispute into conduct that is atrocious or utterly intolerable in a civilized community.  The SAC therefore does not allege conduct sufficiently extreme or outrageous to support IIED liability.

35.     Soul's malicious prosecution theory fares no better.  To succeed in a suit for malicious prosecution, a plaintiff must be able to prove, among other things, that

---

[104] *Root v. MaidPro Wilmington*, 2022 WL 17039161, at *3 (Del. Super. Nov. 17, 2022).
[105] *Sees v. Mackenzie*, 2023 WL 5202675, at *3 (Del. Super. Aug. 14, 2023) (quoting *Root*, 2022 WL 17039161, at *3).
[106] Second Am. Compl. 5 (D.I. 15).
[107] *See, e.g., O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *6–7 (Del. Super. Jan. 14, 2011) (finding that alleged defamation involving false accusations of criminal and fraudulent activity did not give rise to an IIED claim); *Sees*, 2023 WL 5202675, at *3 (finding that alleged insults directed at a plaintiff's protected characteristic, even when made by a person in a position of authority over the plaintiff, did not give rise to an IIED claim).

there was a prior institution or continuation of some regular judicial proceeding against the plaintiff.[108] Since every element of malicious prosecution must be pled, Soul's claim cannot survive.[109] There can be no *malicious* prosecution without *prosecution*. More importantly, there cannot be malicious prosecution by a defendant who did not institute or continue such a proceeding.[110] ADT did not institute or continue any judicial proceeding against Soul, and Soul pleads no facts supporting a reasonably conceivable inference to the contrary.

36. The last of Soul's claims against ADT—her debt collection harassment claim—also fails. The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices."[111] "Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose."[112] A plaintiff bringing an FDCPA claim must show that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as [the statute] defines it, and (4) the defendant has violated a provision of the

---

[108] *Quartarone v. Kohl's Dept. Stores, Inc.*, 983 A.2d 949, 954 (Del. Super. 2009) (citing *Stidham v. Diamond State Brewery, Inc.*, 21 A.2d 283, 284 (Del. Super. 1941)); *Goode v. Kimbro*, 2009 WL 693256, at *2 (Del. Super. Mar. 4, 2009); *Beckett v. Trice*, 1994 WL 710874, at *2 (Del. Super. Nov. 4, 1994), *aff'd*, 660 A.2d 393, 1995 WL 301386 (Del. May 10, 1995) (TABLE) (citing *Megenhardt v. Nolan*, 583 A.2d 660, 1990 WL 169009, at *1–2 (Del. Oct. 18, 1990) (ORDER)).

[109] *Goode*, 2009 WL 693256, at *3 ("[The elements of malicious prosecution] are written in the conjunctive; therefore, all elements must be satisfied for Plaintiff's malicious prosecution claim to survive.").

[110] *See Megenhardt*, 1990 WL 169009, at *2 (victim who reported theft to the police was not liable for malicious prosecution because the State initiated the prosecution); *Beckett*, 1994 WL 710874, at *3 (security company whose undercover agent discovered evidence leading to plaintiff's prosecution was not liable for malicious prosecution because it did not initiate the prosecution).

[111] *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).

[112] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

FDCPA by attempting to collect the debt."[113]  Here, the SAC fails to plead facts sufficient to satisfy these elements.  Although Soul alleges that ADT referred a disputed account to collections and that she received subsequent telephone calls,[114] she does not allege that ADT itself is a "debt collector" within the meaning of the statute, as opposed to a creditor collecting its own debt, nor does she identify any specific conduct that would constitute a prohibited practice under the FDCPA.  The SAC also fails to include any factual allegations regarding the identity or conduct of any third-party debt collector sufficient to establish liability under the FDCPA.  Instead, Soul offers only conclusory assertions that the collection efforts were "harassment" and "false representation of debt," without accompanying factual allegations.[115]  Accordingly, Soul'd FDCPA claim is unsupported by the pleadings.

37.    The Court observes some differences between the facts alleged in the SAC and Soul's responses to the dispositive motions.  While it is understandable for Soul to attempt to reframe the alleged facts surrounding her claims to survive Defendants' 12(b)(6) and 12(c) motions, "[a] *post hoc* attempt to clarify allegations in a complaint in response to a motion to dismiss [or motion for judgment on the pleadings] 'cannot be received as a supplement or amendment to the pleading itself.'"[116]  "The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss."[117]

---

[113] *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).
[114] Second Am. Compl. 3 (D.I. 15).
[115] *Id.* at 3, 6.
[116] *See Murray v. Mason*, 244 A.3d 187, 193 (Del. Super. 2020), *modified* (Jan. 5, 2021); *see also Reylek*, 2023 WL 142522, at *2 (citing *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 155 (Del. Ch. 2003); *Schiavo v. Carney*, 548 F. Supp. 3d 437, 441 n.3 (D. Del. 2021) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (alteration in original) (quoting *Tyler v. Cruz*, 2017 WL 132842, at *5 (D.N.J. Jan. 13, 2017)), *aff'd*, 2021 WL 6550638 (3d Cir. Nov. 18, 2021)).
[117] *Murray*, 244 A.3d at 193 (citing *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006)).

38.    The Court is willing, "[i]n recognition of the difficulties faced by *pro se* litigants . . . [t]o hold a *pro se* complaint to a less stringent standard than that filed by an attorney" when appropriate.[118]  Such accommodation does not mean, however, that *pro se* plaintiffs are subject to a different set of rules.[119]   "The Court's accommodations cannot impair the substantive rights of parties nor the efficient administration of justice to 'save claims that plainly have no merit.'"[120]

**WHEREFORE**, in light of the preceding considerations, Defendants' motions are **GRANTED.**

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls
*Via File & ServeXpress & U.S. Mail*
oc:    Prothonotary
        Counsel of Record
        M. Soul – *Via U.S. Mail*

---

[118] *Webb v. GDWD L. Firm*, 2022 WL 100282, at *1 (Del. Super. Jan. 10, 2022) (citing *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Aug. 15, 2011)).
[119] *Id.* (citation omitted).
[120] *Id.* (quoting *Tingle*, 2011 WL 3654531, at *2).